**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 25, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 01-31017

———————————

GERALD BURGE,

                    Plaintiff-Appellee-Cross-Appellant,

     versus

ST. TAMMANY PARISH; ET AL,

                    Defendants,

RODNEY JACK STRAIN, Sheriff of St. Tammany Parish,

                    Defendant-Appellant-Cross-Appellee.

———————————————————————————————————

GERALD BURGE,

                    Plaintiff-Appellee-Cross-Appellant,

     versus

PATRICK CANULETTE, ETC.; ET AL,

                    Defendants,

DEBRA MCCORMICK,

                    Defendant-Cross-Appellee.

———————————

Appeals from the United States District Court
for the Eastern District of Louisiana

———————————

Before GARWOOD, JONES, and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Rodney Jack Strain, the Sheriff of St. Tammany Parish, Louisiana, appeals the entry of judgment against him in his official capacity, under 42 U.S.C. § 1983, for depriving the appellee, Gerald Burge, of his right to a fair trial. Burge cross-appeals the dismissal of his state-law tort claim against Sheriff Strain for spoliation of evidence. We reverse the entry of judgment against Sheriff Strain and affirm the dismissal of Burge's state tort claim.

## Facts and Proceedings Below

In June of 1991, the appellee, Gerald Burge, brought suit under section 1983 against a litany of defendants, including the then sheriff of St. Tammany Parish, Patrick Canulette, for the deprivation of his constitutional rights to due process and a fair trial. Since its filing in 1991, Gerald Burge's section 1983 claim has come before this court on appeal on three separate occasions. It is before us now for the fourth.

A. *Factual Background*

The general origins of the present appeal lie in a bizarre concatenation of circumstances beginning, over twenty years ago, with the discovery of the body of Douglas Frierson under a bridge in St. Tammany Parish, Louisiana. The details of those circumstances, however, are described at length in two prior

2

published opinions, *Burge v. Parish of St. Tammany*, 996 F.2d 786 (5th Cir. 1993) (*Burge I*), and *Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999) (*Burge III*), and for brevity's sake we set forth here only an abbreviated version of the factual history narrated at length in *Burge III*.

Sometime between midnight and four o'clock a.m. on October 17, 1980, Douglas Frierson was shot to death and his body abandoned beneath a bridge in St. Tammany Parish. That same day, the Chief of Detectives of the St. Tammany Parish Sheriff's Office, Lieutenant E.L. Hermann Jr., assigned two Sheriff's Office detectives, Gary Hale and Clark Thomas, to investigate Frierson's murder.

In the course of the ensuing investigation, Detective Hale took a number of statements from various individuals, the most important of which for the purposes of the present appeal was a statement taken from Douglas Frierson's mother, Jean Frierson. In her first statement to Hale, taken on October 17, 1980, Jean Frierson reported that at midnight on the night of his murder, Douglas Frierson came to her home where she served him a meal of pancakes. She told Hale that after he had finished eating, Douglas Frierson had been picked up at her house by someone in a car, but that she saw neither the vehicle nor the person or persons who came to pick up her son.

Gerald Burge and Joe Pearson were eventually indicted for the

3

murder of Douglas Frierson.  In April of 1984, Burge's counsel filed a *Brady* motion requesting that the St. Tammany Parish District Attorney's Office, then headed by District Attorney Marion Farmer, deliver to him all exculpatory evidence in the state's possession.  The District Attorney's Office responded, and certain documents were delivered to Burge's counsel; those documents, however, did not include the October 17th statement of Jean Frierson to Gary Hale in which she reported that she could not identify the person or persons with whom her son departed on the night of his murder.

In January of 1985, and before Burge's murder charge went to trial, Walter Reed replaced Marion Farmer as District Attorney for St. Tammany Parish.  In preparing to bring Burge's case to trial, however, the new administration discovered that its copy of the Sheriff's investigatory file was missing.  Accordingly, the District Attorney began the process of reconstructing its file and requested that a second copy of the Sheriff's original investigatory file be delivered for use at trial.  A copy of that file was delivered to the District Attorney's Office.  However, according to the testimony of the prosecuting attorney in the case, Paul Katz, the copy of the file delivered by the Sheriff's Office in 1985 also did not contain Jean Frierson's October 17th statement.

At Burge's trial, Jean Frierson testified in a manner

4

contradictory to her original statement to Gary Hale. Specifically, Jean Frierson testified that she saw her son leave with Gerald Burge on the night of the murder. Without the benefit of her original statement to Detective Hale, Burge's counsel was unable to sufficiently impeach Jean Frierson's testimony, and in September, 1986, Burge was convicted for the murder of Douglas Frierson.

According to the record in the present case, the existence of the original Jean Frierson statement eventually came to the attention of Burge's counsel, in part, through the efforts of Lieutenant Hermann of the St. Tammany Parish Sheriff's Office. According to Lt. Hermann's testimony in the present case, immediately after Burge's 1986 trial for Frierson's murder, Detective Hale approached Lt. Hermann to discuss the recent trial. Hermann testified that during the course of his conversation with Hale, Hale showed Lt. Hermann certain documents relating to the original murder investigation that Hale had stored in the trunk of his car, including certain original documents that Lt. Hermann believed should have been delivered to the District Attorney's Office. When Lt. Hermann asked Hale why the documents were in his car, Hale reportedly replied, "If I would have turned this in, it would have caused us to lose—it could have caused us to lose the case."

In 1990, after evidence of Jean Frierson's original statement came to light, and four years after his original conviction, Burge

filed for and was granted state post-conviction relief on the grounds that Jean Frierson's original October 17th statement was exculpatory evidence that should have been produced for the defense under the rule of *Brady v. Maryland*, 83 S.Ct. 1194 (1963). Upon obtaining state post-conviction relief, Burge was tried a second time for Douglas Frierson's murder and in 1992 was acquitted of all charges.

B. *Procedural History*

The procedural history of the present appeal is even more anfractuous than its factual background. Burge filed this section 1983 action in 1991, claiming that members of the Sheriff's Office and the District Attorney's Office had conspired to deprive him of the right to a fair trial by suppressing Jean Frierson's October 17th statement. His initial complaint named as defendants Sheriff Patrick Canulette individually, the St. Tammany Parish Sheriff's Office, Detective Gary Hale, the St. Tammany Parish District Attorney's Office, District Attorney Walter Reed individually, and special prosecutor Paul Katz. After three detours to this court, however, *see Burge v. Parish of St. Tammany*, 996 F.2d 786 (5th Cir. 1993) (*Burge I*), *Burge v. St. Tammany Parish Sheriff's Office*, No. 97-00044 (5th Cir. Apr. 14, 1997) (*Burge II*) (unpublished), *Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999) (*Burge III*), only Gary Hale and Sheriff Patrick Canulette, in his official

6

capacity, remained as defendants in Burge's original action.[1]

On January 1, 1996, Burge filed a second action against the Sheriff and Captain Debra McCormick asserting a state-law claim for spoliation of evidence. That suit was consolidated with Burge's original suit in February, 1996, and on June 22, 2000, the district court issued an order granting summary judgment on Burge's spoliation of evidence claim to the defendants, Captain McCormick and Sheriff Strain. Trial on Burge's remaining original claims from his 1991 civil rights suit began on May 7, 2001, and on May 21 a jury returned a verdict in favor of Burge on his section 1983 claim against both Sheriff Strain and Gary Hale. Sheriff Strain moved for judgment as a matter of law at the close of the plaintiff's case-in-chief, at the close of all the evidence, and again after the entry of judgment against him.

Sheriff Strain now appeals both the denial of his motions for judgment as a matter of law as well as two evidentiary rulings of the district court. Burge cross-appeals the grant of summary judgment on his spoliation of evidence claim.

**Discussion**

A.  *Section 1983*

   1.  Deliberate Indifference: Pattern of Violations

We review *de novo* the district court's ruling on Sheriff

---

[1]  On remand from *Burge III*, Rodney Strain, the new sheriff of St. Tammany Parish, was substituted as a defendant for the previous sheriff, Patrick Canulette.

Strain's motion for judgment as a matter of law.  Judgment as a matter of law is proper where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue."  FED. R. CIV. P. 50(a)(1).  Reviewing all the evidence in the record, we draw "all reasonable inferences and resolv[e] all credibility determinations in the light most favorable to the non-moving party," *Miss. Chemical Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 365 (5th Cir. 2002), and will reverse "only if no reasonable jury could have arrived at the verdict."  *Id*.

Liability under section 1983 attaches where a deprivation of a right protected by the Constitution or by federal law is caused by an official policy.  An official policy can be found in two forms:

> "1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

A claim of a violation of section 1983 pursuant to the latter form of official policy—a persistent, widespread practice of city officials or employers—may in an appropriate case also encompass allegations that a policymaker failed to act affirmatively, including a failure adequately to train a subordinate.

8

According to Burge, the records-keeping practices at the Sheriff's Office caused the *Brady* violation he suffered in his first trial insofar as those procedures permitted certain statements, including Jean Frierson's exculpatory statement, to be omitted from the copy of the investigatory file that was sent from the Sheriff to the District Attorney's Office before Burge's 1986 trial. Specifically, Burge maintains that the constitutional violation he suffered resulted from two claimed deficiencies in the St. Tammany Parish Sheriff's Office, namely: (1) an alleged longstanding practice of failing to deliver all material information uncovered during the course of an investigation to the District Attorney; and (2) assertedly inadequate training in the maintenance and transfer of sheriff's records.

Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official custom or policy is a *sine qua non* of municipal liability under section 1983.[2] Thus, for municipal liability to attach under section 1983 a plaintiff must demonstrate "[a]ctual or constructive knowledge of such custom . . . attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Bennett v. City of Slidell*, 728 F.2d

---

[2] The requirement that a policymaker be charged with actual or constructive knowledge of the policy that inflicts the alleged injury follows from the principle that *respondeat superior* is unavailable against a municipality under § 1983. *See Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

762, 862 (5th Cir. 1984). Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur. *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Where, however, as in the present case, an alleged policy or custom is facially innocuous, establishing the requisite official knowledge requires that a plaintiff establish that an official policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id*. at 579.

The knowledge requirement applies with equal force where a section 1983 claim is premised on a failure to train or to act affirmatively. Thus, an official is liable under section 1983 for a failure to train only where the plaintiff establishes that: "(1) the [official] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur County*, 245 F.3d 450, 459 (5th Cir. 2001); *see also City of Canton v. Harris*, 109 S.Ct. 1197, 1204 (1989) ("The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate

10

indifference to the rights of persons with whom the police come into contact.").

Both of Burge's theories, therefore, required proof of deliberate indifference. And just as proof of a custom or practice requires more than a showing of isolated acts, proof of deliberate indifference, generally requires a showing "of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Thompson*, 245 F.3d at 459. Rather, deliberate indifference generally requires that a plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation." *Id.*

There is no question in this case that the Sheriff of St. Tammany Parish is a final policymaker or that Burge suffered a *Brady* violation in his original trial and conviction for the 1980 murder of Douglas Frierson. And although it is disputed whether the evidence suffices to show that the Sheriff's Office, rather than the District Attorney's, was responsible for the loss of the key statements before Burge's 1986 criminal trial, we assume for present purposes that the evidence suffices to show that, as Burge asserts, the Sheriff's Office failed to transfer the entire investigatory file to the District Attorney and that such failure was the cause of the *Brady* violation. The issue on appeal is thus narrowed to whether Burge presented sufficient evidence to

11

establish knowledge or deliberate indifference to the likelihood of a constitutional violation on the part of the Sheriff. We conclude that he did not.

Burge maintains that three pieces of evidence presented at trial were sufficient to establish a pattern or practice of constitutional violations from which a jury could infer that the Sheriff had been deliberately indifferent to Burge's constitutional rights. First, Burge relies on the testimony of Mario Arthur, an investigator with the St. Tammany Parish District Attorney's Office at the time of Burge's first murder trial. Arthur testified that, at times, he had experienced difficulties in receiving supplemental reports from the Sheriff's Office. Specifically, Arthur testified that if the Sheriff's Office created supplemental reports in a case after the original investigatory file had been transferred to the District Attorney's Office, copies of those reports were not always automatically delivered to the District Attorney and that he could obtain them, therefore, only by specific request. Arthur also testified that if a file contained no indication that a supplemental report had been filed, he would not necessarily know to request the supplemental reports. Second, Burge points to the testimony of Walter Reed, the St. Tammany Parish District Attorney at the time of Burge's 1986 trial. Reed testified that in isolated cases the District Attorney's Office either might not be able to locate documents or might discover that the Sheriff's Office had not delivered certain documents. Finally, Burge relies on evidence

12

that the Sheriff did not have a practice of maintaining a log documenting which statements had been delivered to the District Attorney.

This evidence, whether considered individually or taken as a whole, however, is not sufficient to establish deliberate indifference or knowledge on the part of the Sheriff that a *Brady* violation would be a highly likely consequence of the manner in which his office managed its records or transferred those records to the District Attorney. *Cf*. *Brown v. Bryan County, OK*, 219 F.3d 450, 461 (5th Cir. 2000). To prevail on a *Brady* claim, a defendant must "demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was 'material either to guilt or punishment.'" *Vega v. Johnson*, 149 F.3d 354, 363 (5th Cir. 1998) (quoting *Brady v. Maryland*, 83 S.Ct. 1194, (1963)). Evidence that the District Attorney's Office occasionally had to request documents from the Sheriff does not establish that documents were eventually withheld from a defendant any more than evidence that documents may be difficult to find or that documents are occasionally misplaced establishes a pattern of failing to disclose exculpatory evidence. District Attorney Reed's and Mario Arthur's testimony establishes, at best, only the first two prongs of a *Brady* claim; their testimony does not demonstrate that any given document was ever actually withheld from a defendant, let alone that any given document that might have been

13

withheld was actually material to a specific defendant's guilt or punishment. Moreover, neither Arthur nor Reed were able to identify *any* other case where materials gathered by the Sheriff were withheld from the District Attorney.

Burge's contention that the Sheriff's failure to maintain a log of all documents sent to the District Attorney's Office establishes deliberate indifference also fails. Where it was the Sheriff's policy to transfer copies of all documents in his possession to the District Attorney, the importance of a log is not altogether clear.[3] Moreover, even if Burge is correct that maintaining such a log might have been an effective policy measure, its absence does not rise to the level of deliberate indifference. Debra McCormick, the Sheriff's deputy in charge of maintaining records, did testify that she had received no formal records-keeping training. McCormick also testified, however, that she had received on-the-job training, and Burge presented no evidence tending to show that such on-the-job training was inadequate, nor did he present evidence of any specific additional training that McCormick or the employees of the Sheriff's records room should

---

[3] Multiple witnesses testified that it was the practice and policy of the Sheriff's Office to deliver all investigatory documents, materials and evidence in its possession to the District Attorney. No Sheriff's Office employee testified that they did not understand this to be the office policy and practice; no witness testified that there was any other or contrary policy or practice; no witness testified that Sheriff's Office employees, or any of them, were or considered themselves to be free to do otherwise or to withhold such documents, materials or evidence from the District Attorney.

have received. *Cf. Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Cir. 2002). In addition, Burge failed to demonstrate that McCormick, or any other records-room employee, was unaware of the importance of delivering all investigatory materials to the District Attorney. *Cf. Pineda*, 291 F.3d at 333 (noting that a plaintiff had failed to show that police officers were so untrained as to be unaware that certain warrantless searches violated the Fourth Amendment). On the contrary, McCormick testified that she was familiar with the importance of delivering all evidence to the District Attorney.

Finally, in an attempt to establish a pattern of *Brady* violations, Burge refers, for the first time on appeal, to two cases arising out of St. Tammany Parish that involved a *Brady* violation: *Faulkner v. Cain*, 133 F.Supp.2d 449 (E.D. La. 2001), and *Kirkpatrick v. Whitley*, 992 F.2d 491 (5th Cir. 1993). These cases, however, dealt with *Brady* violations caused by the St. Tammany Parish District Attorney's Office, not by the Sheriff's Department, and they are, therefore, insufficient to demonstrate deliberate indifference on the part of the Sheriff. Moreover, even if these cases were adequate to establish a pattern of constitutional violations sufficient to show deliberate indifference, they constitute evidence that was not submitted to the jury and that we may not, therefore, consider for the first time on appeal. *See Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir.

1999) ("An appellate court may not consider new evidence furnished for the first time on appeal . . . ."). [4]

After thorough review of the record, we conclude that Burge failed to present sufficient evidence to impose section 1983 liability on the Sheriff.

   2.  Deliberate Indifference: Single-Incident Exception

Burge, however, also argues that even if the evidence is insufficient to establish a pattern of constitutional violations, the jury verdict in his favor should be upheld on the grounds that his case falls within the single-incident exception of *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), pet. for reh'g en banc denied, 235 F.3d 944 (5th Cir. 2000).  That exception recognizes that in a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights."  *McClendon v. City of Columbia*, 258 F.3d 432, 442 (5th Cir. 2001).

The single incident exception, however, is a narrow one, and one that we have been reluctant to expand. *See Pineda v. City of*

---

[4]We also note that the *Cain* case was tried in the Eastern District of Louisiana, as was the instant case, and the opinion in *Cain* was handed down approximately three months before trial commenced in the instant case.  This court's opinion in the *Whitley* case was handed down approximately eight years before trial in the case at bar.

16

*Houston*, 291 F.3d 325, 334–35 (5th Cir. 2002) ("Charged to administer a regime without *respondeat superior*, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim."). Accordingly, the exception will apply only where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train. *See Bryan County*, 219 F.3d at 461.

It is not reasonably inferable from the evidence in this case that a *Brady* violation was a highly probable consequence of the Sheriff's policies. Unlike the facts of *Bryan County*, there is no evidence in the present case that the employees of the Sheriff's records room had a reputation for recklessness, or that the on-the-job training those employees received was inadequate. Nor do we accept Burge's argument that the single-incident exception should be expanded based on the latent nature of a *Brady* claim. The frequency with which defendants' assert *Brady* violations belies Burge's claim that *Brady* violations are inordinately difficult to discover. *See, e.g.*, Richard A. Rosen, *Disciplinary Sanctions Against Prosecutors for* Brady *Violations: A Paper Tiger*, 65 N.C. L. REV. 693, 738 (1987) (noting that "[a]lthough there are certainly many cases in which *Brady*-type misconduct is not uncovered, the motivation for a criminal defendant to challenge a conviction on

17

due process grounds and the large number of these cases actually litigated ensure that there is a significant possibility that the misconduct will be discovered"). We decline, therefore, to extend the single-incident exception to the present case, and Burge is accordingly left with the burden of showing deliberate indifference by establishing proof of a pattern of similar violations, a burden he has been unable to carry. *See supra* Part II(A)(2).

Because Burge failed to establish the existence of a single prior *Brady* violation, let alone demonstrate a pattern of similar *Brady* violations sufficient to demonstrate deliberate indifference on the part of the Sheriff, we find that no reasonable jury could have concluded that Sheriff Strain in his official capacity was deliberately indifferent to Burge's right to a fair trial. Accordingly, we reverse the judgment against Sheriff Strain and therefore do not reach the remainder of the Sheriff's arguments on appeal.

B. *Spoliation of Evidence*

On his cross-appeal, Burge challenges the dismissal on summary judgment of his state-law spoliation of evidence claim against Sheriff Strain and Debra McCormick. Between 1991, the date of the filing of Burge's civil suit, and 1995, the original paper copy of the Frierson murder investigatory file was destroyed as part of a routine purging of old files. Well before the purging process began and unrelated to it, the complete original file was produced

18

in the state district court in June 1990 and was copied by the Sheriff's Office for the District Attorney in 1990. The District Attorney then made a copy of his copy and provided it to Burge. The counsel for the Sheriff's Office had a copy of the original file made and provided it to plaintiff's counsel in 1991. The Sheriff's Office photographed the entire original file on microfilm and made a duplicate of the microfilm, both of which remain in the Sheriff's Office, a copy of each having been furnished plaintiff's counsel. Burge has pointed to nothing missing from any of these copies.

Burge maintains, without reasoned explanation or evidentiary support, that because of lack of access to the original file, he is unable to establish not only exactly which documents were not delivered to the District Attorney's Office in 1986, but also who, besides Detective Hale, might have been responsible for the omission of certain statements from the copy of the file that was made for the District Attorney in 1986.

We review a grant of summary judgment *de novo*. *Young v. Equifax Credit Info. Servs. Inc.*, 294 F.3d 631, 635 (5th Cir. 2002). "Summary judgment is proper if, after adequate opportunity for discovery, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is

19

entitled to judgment as a matter of law." *Id*. The moving party bears the burden of pointing to an absence of evidence to support the nonmoving party's case, *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2554 (1986), and we will uphold a grant of summary judgment where the nonmovant is unable, in turn, to point to any evidence in the record that would sustain a finding in the nonmovant's favor on any issue on which he bears the burden of proof at trial. *Id*. at 2252–53.

The Louisiana tort of spoliation of evidence provides a cause of action for an intentional destruction of evidence carried out for the purpose of depriving an opposing party of its use. *Pham v. Contico Int'l, Inc.*, 759 So.2d 880 (La. App. 5 Cir. 3/22/00).[5] After reviewing the summary judgment record we agree with the district court's conclusion that Burge presented no evidence that the Sheriff intentionally destroyed the original file for the purpose of depriving Burge of its use. *See Pham*, 759 So.2d at 883-84 (holding that intent is a necessary element of a claim for spoliation of evidence). Burge cites no evidence, either in his memorandum in opposition to the defendants' motion for summary judgment or in his brief on appeal, tending to show that the

[5] Burge attempts to show, relying on *Guillory v. Dillard's Dep't Store, Inc.*, 777 So.2d 1 (La. App. 3 Cir. 10/11/00), that the tort of spoliation of evidence may also be based on the negligent destruction of evidence. The language in *Guillory* upon which Burge relies, however, is dicta, and does not support the proposition that a spoliation claim can be grounded in negligence.

Sheriff's Office intentionally destroyed the Frierson murder file for such a purpose. Nor is there any evidence of any harm to Burge. We conclude that the district court correctly granted the defendants' motion for summary judgment on Burge's spoliation of evidence claim.

## Conclusion

For the foregoing reasons, we REVERSE the district court's entry of judgment against Sheriff Strain in his official capacity and AFFIRM the grant of summary judgment on Burge's state-law spoliation of evidence claim.

REVERSED IN PART;

AFFIRMED IN PART.