# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2008

Charles R. Fulbruge III
Clerk

No. 06-51386

UNITED STATES OF AMERICA ex rel, MARGARET TAYLOR-VICK

Plaintiff-Appellant

v.

MEDICAL DOCTOR J. SCOTT SMITH; MEDICAL DOCTOR DONALD W. FLOYD; MEDICAL DOCTOR DAVID J. POWER; MEDICAL DOCTOR DANIEL G. NELSON; ORTHOPAEDIC CENTER OF MIDLAND, PROFESSIONAL LLC, doing business as Southwest Orthorpaedic and Spine Center

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

Before KING, GARZA, and BENAVIDES, Circuit Judges.
EMILIO M. GARZA, Circuit Judge:

Relator-Appellant Margaret Taylor Vick ("Vick" or "Relator") appeals the decision of the District Court, which granted summary judgment in favor of Defendants-Appellees: J. Scott Smith, MD; Donald W. Floyd, MD; David J. Power, MD; Daniel G. Nelson, MD (collectively, "Doctors"); and the Orthopedic Center of Midland Professional LLC d/b/a Southwest Orthopedic and Spine Center ("Southwest"). The District Court finally disposed of all Vick's claims under the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"). We affirm.

I

Southwest is a medical facility that provides orthopedic care. Vick was Southwest's officer manager from January 1997 until she was terminated in June 2002. Defendants Smith, Floyd, Power, and Nelson are medical doctors who specialize in orthopedics and provide medical care at Southwest. This appeal arises from allegedly improper Medicare billing practices at Southwest.

During the course of her employment at Southwest, Vick came to suspect that the Doctors, in particular Smith, were "up-coding" their patient visits to obtain higher Medicare payments for the services provided during those visits.[1] According to Vick, the codes used by Smith required that he spend fifteen minutes with each patient. This, however, would have been impossible because, according to Vick, Smith saw 50 to 80 patients each day. Vick further alleged that Power and Floyd were made aware of Smith's allegedly improper billing practices and that, in response, they instructed Southwest staff to "down-code" some of his claims.

In June 2002, Vick took her concerns about the billing practices at Southwest to the FBI. Vick spoke with the FBI and provided certain information and documents, which she claimed substantiated her allegations. Later that month, Southwest placed Vick on a trial separation from her position as office manager; Southwest ultimately terminated her. During her trial separation, Vick remained employed by Southwest but no longer had access to the documents that she had been providing to the FBI.

In August 2002, Vick filed this lawsuit. The United States declined to intervene on March 31, 2003. Because she had no direct knowledge of actual instances of "up-coding," Vick sought to make her case through circumstantial

---

[1] To obtain Medicare payments for their services, physicians must submit claims, which use codes to identify the services provided. The amount of a Medicare payment due a physician is determined by the particular code(s) specified in a claim. "Up-coding" is the practice of submitting claims that are erroneous because they specify codes for higher-paying services than those that a physician actually provided.

evidence. Specifically, Vick employed an expert witness ("Britton") to analyze Defendants' billing records and determine whether there was a pattern of "up-coding" from which the Court could draw an inference of scienter under the FCA. Defendants likewise employed an expert ("Ellis") to analyze their billing records.

After analyzing Defendants' billing records, Britton testified repeatedly that she "did not know what the intent of the physicians was," but that she believed there was a pattern sufficient to indicate that false claims may be occurring. Ellis, in contrast, did not find "a pattern of billing improprieties" or "any fraudulent claims." Ellis did, however, determine that the Defendants had "some documentation issues that need improvement," but that, "in general," they "undercode[d]" more often than they "upcode[d]" thereby "costing the practice revenue" and actually undercharging Medicare rather than overcharging Medicare. Britton, too, found evidence of "undercoding" during her analysis of Defendants' records.

After three and a half years of discovery, the District Court granted summary judgment in favor of Defendants. Specifically, the District Court found that "Relator has not produced any evidence which creates a fact issue concerning the . . . scienter element" of her FCA claim, and that, "[a]t the most, Relator has shown innocent mistakes and negligence," which are not FCA violations. Accordingly, the District Court held that summary judgment was proper because Vick had "presented no evidence . . . to sustain the scienter element of her claim."

## II

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the District Court of the basis

of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). Once the moving party fulfills this responsibility, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of material fact for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Crawford v. Formosa Plastics Corp., Louisiana, 234 F.3d 899, 902 (5th Cir. 2000).

## A

The first issue is whether Defendants had the requisite knowledge or scienter to be liable under the FCA. The FCA provides for civil liability against:

> Any person who -- (1) knowingly presents or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or] (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . .

31 U.S.C. § 3729(a) (emphasis added). For the purposes of the FCA, the term "knowingly" means:

> that a person, with respect to information -- (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard

of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(b). With respect to the scienter issue, the District Court found that Vick "had no actual knowledge of false claims knowingly presented by the Defendants" and that, instead, her claim "relie[d] on the review of patient medical records by her expert witness, Wendy Britton." Taking into consideration "the review of records by her expert, Ms. Britton," the District Court concluded that the "Relator has presented no evidence . . . to sustain the scienter element of [her] claim." Accordingly, the District Court held that "the Relator has failed to show any evidence supporting the requisite scienter on the part of Defendants . . . necessary to bring a claim under the False Claims Act."

Vick raises several arguments in support of her contention that there is a genuine issue of material fact as to whether Defendants had the requisite scienter. First, Vick contends that this Court disfavors granting summary judgment on an issue that turns on a state-of-mind determination, like scienter. Second, Vick contends that, although she has no direct evidence of scienter, she has provided adequate circumstantial evidence of scienter. Specifically, Vick contends that the evidence analyzed by her expert, Ms. Britton, shows a pattern of erroneous billing, which, when combined with Vick's testimony that the Doctors were aware of certain billing anomalies, adds up to an inference of scienter. Finally, Vick argues that unless the Defendants can point to evidence establishing the absence of scienter, then the summary judgment standard requires that we draw an inference of scienter in her favor.

Defendants counter that Vick has no knowledge or direct evidence of scienter and that, at most, she could identify only negligent billing errors and mistakes which are not offenses under the FCA. Defendants further contend that neither Vick nor her expert Britton presented circumstantial evidence

sufficient to support an inference of scienter.[2]  Finally, in the alternative, Defendants argue that Vick did not even allege, let alone prove, scienter on the part of Defendants Floyd, Power, and Nelson.  Because we find that there is no genuine issue of material fact suggesting that the Doctors had the requisite scienter to create FCA liability, we need not address this alternative argument.

It is indeed well-settled, as Vick points out, that we hesitate to grant summary judgment when a case turns on a state of mind determination.  See International Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1265 (5th Cir. 1991) ("we have emphasized repeatedly that cases which turn on the moving party's state of mind are not well-suited for summary judgment").  It also is possible for an FCA relator, like Vick, to establish the scienter element of her claim through circumstantial evidence.  See Financial Acquisition Partners LP v. Blackwell, 440 F.3d 278, 287 (5th Cir. 2006) ("Circumstantial evidence can support a scienter inference.").  Nevertheless, these principles do not control the outcome of this case.  Reviewing the record in the light most favorable to Vick and drawing all reasonable inferences in her favor, see Hockman v. Westward Communications, LLC, 407 F.3d 317, 325 (5th Cir. 2004), we find that she cannot prevail.

It is a long-established rule of this Circuit that to show a violation of the FCA, the evidence must demonstrate "'guilty knowledge of a purpose on the part of [the defendant] to cheat the Government,'"  United States v. Aerodex, Inc., 469 F.2d 1003, 1007 (5th Cir. 1972) (quoting United States v. Priola, 272 F.2d 589, 594 (5th Cir. 1959)), or "'knowledge or guilty intent,'" Aerodex, 469 F.2d at 1007 (quoting United States v. Ridglea State Bank, 357 F.2d 495, 498 (5th Cir. 1966));

---

[2] Defendants spend much of their argument pointing out the putative flaws in Britton's methodology, as though this were a Daubert hearing, rather than arguing that, notwithstanding Britton's conclusions, summary judgment was proper.  We need not consider these arguments.

see also United States v. Hangar One, Inc., 563 F.2d 1155, 1157 (5th Cir. 1977). The Aerodex Court found the requisite intent because the defendants contracted with the government to supply a particular type of aircraft bearings, but, when the defendants could not procure them, they falsely labeled other bearings and substituted them for those specified in the contract. 469 F.2d at 1008. The plaintiffs in Hangar One survived summary judgment by submitting affidavits of workers attesting that they had personally facilitated frauds on the Government by failing to inspect artillery shells before shipping them and, in some cases, by including defective artillery shells in shipments bound for the government. 563 F.2d at 1157-58. But in Priola, the Court held that the defendant lacked the requisite intent, even though she signed certain purchase orders underlying the false claims, because the Government could not establish that she had "guilty knowledge" of a plan to cheat the Government. 272 F.2d at 592-94. Under these precedents, a relator, like Vick, cannot survive summary judgment merely by submitting evidence of false claims; she must have evidence that the defendants knowingly or recklessly cheated the government.

Neither Vick nor Britton have adduced evidence which creates a genuine issue of material fact as to whether Defendants knowingly or recklessly cheated the government. Neither has personal knowledge of whether Defendants had the intent necessary to be liable under the FCA. Indeed, Vick cannot point to a single instance in which Defendants submitted a false claim to Medicare, let alone an instance in which Defendants knowingly or recklessly submitted such a claim. For her part, Britton did identify what she believed to be a pattern of erroneous billing that might support an inference of scienter, but at the same time Britton acknowledged that this erroneous billing included not only over-billing but also under-billing) ) showing that Defendants were merely negligent billers, which does not offend the FCA. Based on the evidence adduced, we cannot find a genuine fact issue that would preclude summary judgment.

B

The second issue is whether Vick's lack of evidence concerning scienter is due to Defendants' non-compliance with her discovery requests. The District Court found no such non-compliance, specifically observing that "over the past three and a half years in which this case was pending before the Court, the Relator has had sufficient time and opportunity to obtain evidence from Defendants . . . [and] ample opportunity to inspect documents and other potential evidence . . . ."

Vick argues that summary judgment was premature because the District Court did not permit full discovery of the medical records necessary to substantiate her claims. Specifically, Vick argues that she would have survived summary judgment had the District Court ordered Defendants to produce paper documents rather than only electronic copies. In response, Defendants assert that they fully complied with all Vick's discovery requests, that electronic copies of documents are the equivalent of photocopies, and that Vick did not even bother to review many of the documents provided to her.

We review the discovery decisions of a District Court for abuse of discretion, including a decision, as here, to forego additional discovery and rule on a summary judgment motion. See Moore v. Willis Independent School Dist., 233 F.3d 871, 876 (5th Cir. 2000) (holding that the District Court did not abuse its discretion in granting summary judgment against the plaintiffs without first allowing them leave to depose the defendants) (citations omitted). We will affirm unless the discovery decision is arbitrary or clearly unreasonable. See id.

In affirming the grant of summary judgment against the plaintiffs in Moore, we observed that the lawsuit had been pending for fourteen months before the summary judgment ruling and that the plaintiffs made only a "conclusional argument" that they should have been allowed further discovery, but did not state "what relevant evidence they expected to uncover with

additional discovery." Vick has even less ground to stand on than did the Moore plaintiffs: her case had been pending for three and a half years when summary judgment was granted; there is no indication in the record that Defendants have withheld documents improperly; and Vick cannot cogently explain how paper records would succeed in proving her case where electronic records have failed. The District Court has no obligation to placate Vick by continuing discovery indefinitely. All good things, including discovery, must come to an end. The District Court did not abuse its discretion in granting summary judgment after three and a half years of discovery.[3] See id.

## III

For the foregoing reasons, we affirm the judgment of the District Court. AFFIRMED.

---

[3] Because we reject all of Vick's arguments, we need not reach Defendants' alternative argument that the original source doctrine bars this suit.