IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 2, 2008

Charles R. Fulbruge III
Clerk

No. 07-20482
Summary Calendar

ROBERT BARKLEY

Plaintiff-Appellant

v.

DILLARD DEPARTMENT STORES INC; HARRIS COUNTY TEXAS;
WILLIAM WILKINSON, Individually

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-0843

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Before the court is an appeal by Plaintiff-Appellant Robert Barkley ("Barkley") of the district court's order granting the summary judgment motions of Defendants-Appellees Dillard's Department Stores, Inc. ("Dillard's") and Harris County, Texas ("Harris County"). Because Dillard's is not a state actor for purposes of 42 U.S.C. § 1983, we AFFIRM the district court's grant of

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

summary judgment to Dillard's. Further, because Barkley failed to create a genuine issue of material fact that his injuries resulted from a policy or custom of Harris County, we AFFIRM the district court's grant of summary judgment to Harris County.

## I. BACKGROUND

The allegations in this case concern an incident that took place on May 7, 2004, when Barkley was shot three times by Defendant-Appellee William Wilkinson ("Wilkinson"), a Harris County Sheriff's Deputy. At the time of the shooting, Wilkinson was not on-duty as a deputy but was working as a private security guard for Dillard's. Wilkinson was inside Dillard's when he received a radio communication from James Wheat ("Wheat"), a Dillard's employee who monitored all of the security cameras in Dillard's. Wheat informed Wilkinson that a black male in a blue dress shirt (Barkley) who had previously shoplifted from Dillard's was in the men's department with a large Dillard's bag. Wheat instructed Wilkinson to proceed to the men's department in case the man attempted to shoplift again. While Wilkinson was making his way to the men's department, Wheat informed Wilkinson that the man had just stolen Dillard's merchandise and was leaving the store. Wheat then told Wilkinson that the man turned left upon exiting the store.

Barkley's account of the events that followed differs markedly from that of Wilkinson. Although we set forth both sets of facts, we take Barkley's version as true for purposes of summary judgment. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000). Barkley admits that he shoplifted merchandise from Dillard's and that he exited the store and walked at a "fast pace" to his car. Barkley states that it was only after he had backed out of his parking space that he heard Wilkinson yelling at him. Barkley lifted his hands off of the steering wheel and did not put the car into drive. Wilkinson then shot

him three times, hitting him in the arm, jaw, and hand. Barkley managed to put his car in park and fell out of the door, at which time Wilkinson arrested him.

Wilkinson, on the other hand, asserts that, upon exiting the store, Barkley turned around and saw Wilkinson pursuing him. Barkley began to run toward his car, and Wilkinson ran after Barkley ordering him to stop. According to Wilkinson, Barkley quickly backed out of the parking space and began driving toward Wilkinson at a fast speed. Wilkinson claims that he was "caught" in a confined area and feared for his life, so he discharged his weapon into the car three times. The car stopped, and Wilkinson arrested Barkley.

Barkley filed suit against Dillard's, Harris County, and Wilkinson, bringing claims under 42 U.S.C. § 1983 and Texas state law. All three defendants moved for summary judgment. The district court granted summary judgment to each defendant on Barkley's federal law claims and then declined to exercise supplemental jurisdiction over Barkley's remaining state law claims. See 28 U.S.C. § 1367(c). Barkley has appealed the judgment of the district court. Because he makes no arguments that the district court erred in granting Wilkinson's motion for summary judgment, Barkley has abandoned that claim on appeal. Therefore, we consider only the claims against Dillard's and Harris County.

## II. DISCUSSION

### A. Standard of Review

We review a district court's order granting summary judgment de novo. High v. E-Systems Inc., 459 F.3d 573, 576 (5th Cir. 2006). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. U.S. ex rel. Taylor-Vick v. Smith, 513 F.3d 228, 230 (5th Cir. 2008); see also FED. R. CIV. P. 56(c). The moving party has the initial burden of identifying the pleadings and evidence which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party then has the responsibility of demonstrating specific facts showing that there is a genuine issue for trial. Id. at 324. A genuine issue of material fact exists "'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" U.S. ex rel. Taylor-Vick, 513 F.3d at 230 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). All facts are considered in the light most favorable to the non-moving party, and all inferences must be drawn in that party's favor. Crawford, 234 F.3d at 902.

B.    Claims Against Dillard's

In its summary judgment order, the district court concluded that Barkley failed to show that Dillard's was a state actor for purposes of establishing liability under 42 U.S.C. § 1983. Barkley contests that conclusion on appeal.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (emphasis added). However, a person need not be a state officer in order to act under color of state law. Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 460 (5th Cir. 2003) (per curiam). Instead, "a private entity acts under color of state law when that entity performs a function which is traditionally the exclusive province of the state." Id. (internal quotation marks and citation omitted); see also Evans v. Newton, 382 U.S. 296, 299 (1966) (noting that a private entity operates as a state actor when it is "endowed by the State with powers or functions governmental in nature"). Barkley contends that, when Dillard's hired Wilkinson to "Enforce all State and Federal Laws" in his Harris County Sheriff's uniform, Dillard's became a state actor in that it was performing traditional state functions.

This court has previously set forth the standard for demonstrating state action in circumstances such as this. In Morris v. Dillard Department Stores,

Inc., 277 F.3d 743 (5th Cir. 2001), the court considered whether Dillard's was a state actor for purposes of a Fourth Amendment claim when it employed a municipal police officer as a private security guard and the officer arrested an individual suspected of shoplifting. After reviewing the court's previous decisions, we concluded that "we will not subject a merchant to § 1983 liability unless an officer has failed to perform [an] independent investigation" and that "evidence of a proper investigation may include such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report." Id. at 750. In Morris, the officer questioned the employee making the report of shoplifting, observed the alleged shoplifter (who did nothing illegal during that time), wrote down the license plate number of the alleged shoplifter's car, arrested the alleged shoplifter after she confronted him, and wrote up his own police report detailing his actions and investigation. Id. The officer testified without contradiction that he did not make his decision to arrest the alleged shoplifter until after the individual confronted him, indicating that he was not acting solely on the basis of the employee's report. Id. We held that this was evidence of an independent investigation that removed Dillard's from liability as a state actor. Id.

In this case, taking the facts in the light most favorable to Barkley, the evidence shows that Wilkinson received a report of shoplifting. He then spotted Barkley, who fit the description of the shoplifter, walking at a fast pace to his car while carrying a large Dillard's bag. Dillard's never ordered Wilkinson to arrest Barkley, and Wilkinson asserted without contradiction in his affidavit that he made the decision to apprehend Barkley based on his own analysis. Wilkinson further asserts that he would not have arrested an individual solely on the basis of a report by a Dillard's employee without making his own investigation of the matter. In this instance, Wilkinson claims that he determined that, regardless

of Dillard's rules, he had the duty as a police officer to try and prevent any theft that might be occurring.

Taking all of these facts into account, Barkley has failed to present sufficient evidence that Dillard's was a state actor. Although Dillard's notified Wilkinson of the shoplifter, Wilkinson made an independent decision to chase after and attempt to apprehend the suspect. These facts are in contrast with those in Smith v. Brookshire Brothers, Inc., 519 F.2d 93 (5th Cir. 1975) (per curiam), in which we found that Brookshire was a state actor because "the police and [Brookshire] maintained a pre-conceived policy by which shoplifters would be arrested based solely on the complaint of the merchant." Morris, 277 F.3d at 748-49. There is no evidence of a pre-conceived policy in this case. Therefore, based on the facts described above, we conclude that the district court did not err in deciding that Dillard's was not a state actor. Consequently, we affirm summary judgment for Dillard's.

C.    Claims Against Harris County

We turn now to Barkley's claims against Harris County. The district court granted summary judgment to Harris County because it first granted summary judgment to Wilkinson. The district court reasoned that because no claims could be brought against Wilkinson, Harris County could not be liable. See, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). The district court erred in employing this reasoning, however. Barkley's claims against Wilkinson were dismissed, not because of a lack of a constitutional violation, but because Barkley failed to serve Wilkinson in a timely fashion, which permitted the statute of limitations to run. A ruling that Barkley's claims against Wilkinson are untimely says nothing about whether Harris County (which was timely served) had a policy or custom

that caused the deprivation of Barkley's constitutional rights.[1]  Indeed, Harris County does not argue that the decision should be affirmed on this basis. Consequently, the district court erred in granting summary judgment to Harris County based solely on the grant of summary judgment to Wilkinson.

Our inquiry does not end there, however, as we may affirm the grant of summary judgment on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for the result.  See Montgomery v. Brookshire, 34 F.3d 291, 297 (5th Cir. 1994); see also Stanley v. Trinchard, 500 F.3d 411, 428 (5th Cir. 2007) (noting that the court "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision" (internal quotation marks omitted)).  Harris County urges us to consider the merits of Barkley's claim against it, specifically, whether Barkley has evidence of a policy or custom of Harris County that caused his injuries.

It is well established that governmental liability under § 1983 must be premised on a government policy or custom that causes the alleged constitutional deprivation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.  Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003).  A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.  Id.  Here, Barkley argues that Harris

---

[1] Similarly, a municipality can be liable for a constitutional violation even when its police officers are entitled to qualified immunity for their actions.  See, e.g., Glenn v. City of Tyler, 242 F.3d 307 (5th Cir. 2001) (finding that police officers were entitled to dismissal based on qualified immunity but that claims remained against the city).

County had a policy or custom of inadequately training its deputies, especially with respect to shooting at individuals in vehicles, and not properly investigating alleged instances of excessive force, thereby creating an atmosphere that permitted such uses of force.

Wilkinson relies on three main pieces of evidence in making his claim: (1) allegations that Wilkinson previously used excessive force against Bonafacio Juarez ("Juarez"); (2) two newspaper articles detailing various incidents of officers shooting at vehicles and the government's response; and (3) the expert report of Roger Clark.

Turning first to the allegations regarding Juarez, Barkley asserts that Wilkinson used excessive force when he assaulted Juarez on October 6, 2003, and that Harris County therefore knew that Wilkinson was prone to using excessive force and did nothing about it.[2] At the time of the alleged assault, Juarez was under arrest for drunk driving and handcuffed to a bench. Wilkinson claimed he hit Juarez after Juarez began to kick him. Harris County cleared Wilkinson of any wrongdoing, and Juarez subsequently pleaded guilty to attempted assault on a peace officer, although he currently denies those charges. This single allegation of excessive force is not sufficient evidence to put Harris County on notice that Wilkinson might need closer supervision or training, especially in light of the fact that the victim pleaded guilty to attempting to assault Wilkinson. Cf. Brown v. Bryan County, 219 F.3d 450, 454-55, 458 (5th Cir. 2000) (noting that deputy's prior arrests for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, and other crimes indicated a need for further training).

---

[2] Barkley also asserts that Wilkinson used excessive force in shooting another individual some time after the events of the instant case. We do not consider that shooting as it could not have informed Harris County's judgment of Wilkinson at the time of Barkley's shooting.

Barkley also presented two articles from the Houston Chronicle that detail a four-month investigation into the use of force by Harris County deputies and Houston police officers. The first article noted that officers and deputies were going against their training by intentionally placing themselves in danger by stepping in front of vehicles, leading to an unusual number of shootings by officers. The second article reported that the Harris County Sheriff had adopted a new policy to further restrict when force could be used when a suspect was inside a vehicle. We first note that newspaper articles are hearsay and inadmissible. Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005) (stating that newspaper articles are "classic, inadmissible hearsay"). Regardless, these articles do not evidence a policy or custom of unconstitutional shootings. Although the authors indicate their belief that many of the shootings were not justified, there is no evidence that the authors were employing any sort of constitutional standard. Further, the articles indicate that the officers were acting "in violation" of their training and that Harris County took steps to correct the matter as a result of the findings of the reporters. Thus, even were we to consider the articles as evidence, they do not indicate that Harris County had a policy or custom of permitting unconstitutional uses of force or that Harris County was deliberately indifferent to the need to train.

Barkley next relies on the report of his police practices expert Roger Clark ("Clark"). In his report, Clark opines that Harris County has a custom and practice of permitting the use of excessive force by its deputies. To reach this conclusion, Clark states that he reviewed sixty-eight internal affairs files from Harris County regarding police shootings. His report then lists the name of each file and marks with an asterisk the ones in which Clark concluded the shooting was not justified. While Harris County found five of the sixty-eight shootings to be unjustified, Clark believed forty-two were not justified. Clark, however, provides no explanation for his conclusions—only asterisks. There is nothing in

the report to suggest Harris County acted improperly other than Clark's bare conclusion that numerous shootings were not justified. We do not accept such conclusory statements as sufficient evidence to overcome summary judgment. Guile v. United States, 422 F.3d 221, 227 (5th Cir. 2005) ("A claim cannot stand or fall on the mere ipse dixit of a credentialed witness." (internal quotation marks omitted)); Calbillo v. Cavender Oldsmobile, Inc., 288 F.3d 721, 725 (5th Cir. 2002) (noting that conclusory allegations and unsubstantiated assertions are insufficient to overcome summary judgment). Thus, Clark's report is not sufficient to create a genuine issue of material fact regarding policy or custom.

In order to hold Harris County liable for its lack of training, Barkley was required to present evidence that Harris County was deliberately indifferent to the need for more or better training. See City of Canton v. Harris, 489 U.S. 378, 389 (1989). Barkley has not identified any training deficiency. Indeed, there is no evidence of what training Wilkinson or any other officer received with respect to excessive force. Similarly, Barkley has not identified any deficiency in Harris County's investigation of officer shootings, other than his disagreement with the conclusions reached by Harris County. Therefore, there is no evidence that Harris County failed to train Wilkinson or that it used improper methods to investigate officer shootings.

Barkley bases part of his argument on the theory of ratification that we used in Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), which concerned allegations that the police shot an innocent man. In Grandstaff, we upheld a jury verdict against a city based on a custom of reckless disregard for human life that was prevalent among the officers. Id. at 170-72. There, the entire night shift of the Borger police department "poured" gunfire into a slow-moving pick-up truck "without awaiting any hostile act or sound . . . ." Id. at 168 ("They simply saw a target and fired."). We characterized the events leading to the shooting as an "incompetent and catastrophic performance" and a "gross . . .

10

abuse of the use of deadly weapons . . . ." Id. at 171. We concluded that, because the officers received no reprimands or discharges from the city following such a flagrant use of excessive force, there must have been a preexisting disposition and policy of reckless disregard for life. Id. at 171-72. Barkley urges us to reach the same result in this case.

Grandstaff, however, has not enjoyed wide application in our circuit. Snyder v. Trepagnier, 142 F.3d 791, 797 (5th Cir. 1988). We have limited its ratification theory to "extreme factual situations." Id. at 798 (refusing to apply Grandstaff to case in which police shot fleeing suspect in the back); Coon v. Ledbetter, 780 F.2d 1158, 1161-62 (5th Cir. 1986) (noting that a policymaker may defend the actions of his employees without incurring liability). The instant situation is not an extreme factual situation as in Grandstaff, but is more like Snyder, in which a single officer was involved in shooting a fleeing suspect. Consequently, we decline to apply the theory used by the court in Grandstaff.

For the foregoing reasons, Barkley has failed to meet his burden of creating a genuine issue of material fact regarding whether his injuries were caused by a policy or custom of Harris County. We therefore affirm summary judgment for Harris County.

### III. CONCLUSION

Because Dillard's is not a state actor and because there is no evidence that Harris County had a policy or custom that caused Barkley's injuries, we AFFIRM the judgment of the district court.

AFFIRMED.