# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 15, 2013

No. 11-51226

Lyle W. Cayce
Clerk

MICHELLE MARTINEZ; MARIO MARTINEZ, JR., A Minor, By and
Through Next Friend Mario Martinez, Sr.; MARIO MARTINEZ,

Plaintiffs - Appellants,

v.

MAVERICK COUNTY; TOMAS HERRERA, As Maverick County Sheriff in
His Individual Capacity; ROBERTO SIFUENTES, Maverick County Sheriff's
Deputy in His Individual Capacity; MARCOS JESUS RIVERA, Maverick
County Sheriff's Deputy in His Individual Capacity; OSVALDO LOPEZ,
Maverick County Sheriff's Deputy in His Individual Capacity,

Defendants - Appellees.

Appeal from the United States District Court
for the Western District of Texas
U.S.D.C. No. 2:08-CV-77-AM

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal arises out of the events leading up to and following the arrest
of Plaintiff-Appellant Michelle Martinez subsequent to a traffic stop in Eagle
Pass, Texas. Martinez and her husband and son appeal the district court's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-51226

dismissal of claims and grant of summary judgment for the defendants on her 42 U.S.C. § 1983 claims and state law claims. For substantially the same reasons as the district court, which adopted the magistrate judge's report and recommendations, we AFFIRM.

Various Maverick County Deputies (the "Deputies") were involved in an incident following an attempted traffic stop of Martinez for misdemeanor traffic violations. Martinez resisted arrest and attempted to flee in her vehicle at a high speed. A deputy pursued, using several techniques to stop her, including maneuvering her vehicle off the road and shooting her tires. Martinez continued to flee in her vehicle, nearly hitting another officer who had arrived in the area to assist. Fearing for their safety and that of others in the surrounding community, the Deputies shot at Martinez's vehicle 15 to 18 times. One of these shots struck her in the neck, injuring her and rendering her a quadriplegic.

On appeal, Martinez essentially challenges the entirety of the district court's ruling on her substantive claims:[1]

1. *Denial of Medical Care.* We agree with the district court that Martinez failed to state a claim for denial of medical care against any defendant. Martinez did not allege the existence of any additional harm beyond her original injury occasioned by the Deputies' alleged failure to provide or summon medical help immediately. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1985).

---

[1] Martinez waived any challenge to the denial of her motion for remand (challenging procedure, not subject-matter jurisdiction) by not timely moving for remand. *See* 28 U.S.C. § 1447(c); *Baris v. Sulpico Lines, Inc.*, 932 F.2d 1540, 1543 (5th Cir. 1991). We agree with the district court that Martinez's husband and her son failed to establish standing by not putting forth facts implicating a right of recovery separate from the alleged violations of Martinez's personal rights. *See Coon v. Ledbetter,* 780 F.2d 1158, 1160 (5th Cir. 1986).

No. 11-51226

2. *Sheriff's Office[2] Policy or Custom.*  Nor did Martinez sufficiently allege the existence of an unconstitutional policy or custom of the Maverick County Sheriff's Office resulting in a violation of her rights, as required to state a claim against it.  *See Piotrowski v. City of Houston*, 237 F.3d 567, 578–81 (5th Cir. 2001).  While Martinez made wide-ranging conclusory allegations of corruption within the Sheriff's Office, she failed to identify any injury-causing policy or to establish that her injuries were the direct result of any such policies.  *See id.* at 578; *see also Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

3. *Inadequate Training.*  Martinez's claim of constitutionally inadequate training against the Sheriff's Office was not supported with sufficient evidence suggesting that the County deviated from state-mandated training requirements, or that its training was constitutionally deficient.  In order to avoid summary judgment, she needed to demonstrate "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation."  *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (internal quotation marks and citation omitted).[3]  She did not do so, and therefore summary judgment was appropriate.

---

[2]  Liability under § 1983 for a supervisor may exist based either on "personal involvement in the constitutional deprivation," or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).  Since Martinez's complaint did not allege that Sheriff Herrera had personal involvement in the events leading to her injury, the district court properly dismissed the Fourth and Fourteenth Amendment claims against him, as the complaint lacked allegations that sufficiently tied the constitutional violations to Sheriff Herrera's alleged wrongful conduct.  In sum, the individual-capacity suit against Sheriff Herrera fails because nothing in the record shows that he had any direct, personal involvement in the Martinez incident.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).  Because an official-capacity suit is a suit against a municipality, that aspect of Martinez's suit is subsumed in the municipal liability discussion herein.

[3]  To the extent that single-incident liability retains viability as a theory of municipal liability after *Thompson v. Connick*, 131 S. Ct. 1350 (2011), a question we need not decide, it would not apply here.  Martinez asserts that the Sheriff's Office had a "policy" of engaging in pretextual traffic stops and falsifying official records.  She has not alleged facts sufficient to

No. 11-51226

4. *Individual Deputies' Qualified Immunity Defense.* Martinez also failed to rebut the Deputies' qualified immunity defense by showing that the Deputies' use of force was excessive or objectively unreasonable. *See Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). An officer's use of deadly force is presumptively reasonable, and thus presumptively not in violation of the constitution, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others. *See id.* The Deputies were reasonable to believe that Martinez's erratic attempts to flee posed a threat of serious harm to themselves and the surrounding community, making qualified immunity on the excessive force claims and summary judgment appropriate.

5. *Official Immunity Under Texas Law.* Finally, we agree with the district court that the Deputies and Sheriff Herrera were entitled to official immunity under Texas law on Martinez's state law claims. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653-58 (Tex. 1994). Maverick County is also immune from Martinez's tort claims. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.055, 101.057. The limited waiver to state immunity in the Texas Tort Claims Act does not apply unless the state employee is personally liable to the claimant under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 101.021; *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995). Because the Deputies and Sheriff Herrera are entitled to official immunity, there is no waiver of the County's immunity.

AFFIRMED.

---

show that the unconstitutional consequences of the alleged Sheriff's Office policies "could be so patently obvious that a [governmental entity] could be liable under § 1983 without proof of a pre-existing pattern of violations." *See id.* at 1361. Moreover, in addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation. *Pietrowski*, 237 F.3d at 580. Thus, even if there were such policies, Martinez has not brought forth facts that would establish that her injuries resulting from the force used to stop her from fleeing were the direct result of any such policies. *See Brown*, 520 U.S. at 403.