United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 13, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-30824

_____

JOYCE C. ROBERTS, ETC.; ET AL.,

Plaintiffs,

LATASHA MILLS, on behalf of La'Quarshay Mills;
NICOLE MOTON, on behalf of Kearra S. Moton,

Plaintiffs-Appellees,

versus

CITY OF SHREVEPORT, ETC., ET AL.,

Defendants,

CITY OF SHREVEPORT, on behalf of Police Department of
Shreveport; STEVE PRATOR,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before JONES, SMITH, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Defendant-Appellants City of Shreveport and Police Chief
Steve Prator appeal the district court's denial of summary
judgment, arguing that each is entitled to qualified immunity from
this § 1983 lawsuit. As to Defendant-Appellant City of Shreveport
and Defendant-Appellant Steve Prator in his official capacity, we
DISMISS the appeals for lack of jurisdiction. As to Defendant-

Appellant Steve Prator in his individual capacity, we REVERSE the district court and RENDER judgment, dismissing him from the instant action on the basis of qualified immunity.

## I.  Background

On Sunday morning, March 14, 1999, Officer Robert Rivet ("Officer Rivet") of the Shreveport, Louisiana Police Department was working as a crossing guard for the Springs of Grace Baptist Church.  Although Officer Rivet was working off-duty, he was wearing a distinctive police baseball cap and jacket.  With traffic stopped in both directions, Officer Rivet escorted a woman and her child across the street using the crosswalk.  As the group reached the middle of the street, a car approached.[1]

While attempting to get the pedestrians out of the way, Officer River signaled to the driver, Undray Carter ("Carter"), to slow down and stop.  Although the parties give widely divergent accounts of the ensuing moments, they agree that Officer Rivet ended up on the hood of Carter's vehicle.[2]  Officer Rivet struck

_____

[1]    There is some disagreement as to Carter's reason for coming into the intersection in this manner.  Defendants assert that Carter was drunk and driving recklessly.  Plaintiffs deny that Carter was intoxicated.  Appellants' Br. at 3. The autopsy indicates that Carter had a blood alcohol level of 0.18, nearly twice the legal limit for driving in Louisiana.  R. at 1031.

[2]    Defendants claim that Carter slowed but ultimately struck Officer Rivet.  Appellees' Br. at 5.  By contrast, plaintiffs claim that Carter's vehicle fully stopped in front of Officer Rivet, who then inexplicably leaped onto Carter's car and "began striking the vehicle with his handgun."  Appellants' Br. at 2.

2

Carter's windshield twice with his service revolver and ordered him to stop the car. Carter, cursing, applied the brakes, then the gas, sequentially, apparently trying to throw Officer Rivet off the car. This jerking motion threw Officer Rivet to the driver's side of the car. As he was falling, Officer Rivet fired a single, fatal shot at Carter. Officer Rivet gave no warning before discharging his weapon as he was thrown from the moving vehicle.

Plaintiffs, LaTasha Mills (on behalf of her minor child, La'Quarshay Mills) and Nicole Moton (on behalf of her minor child, Kearra Moton), brought suit under 42 U.S.C. § 1983 and Louisiana state tort law against Officer Rivet, former Chief of Police Steve Prator (in both his official and individual capacities), the City of Shreveport, Springs of Grace Baptist Church, and emergency medical personnel Greg Jackson, Chuck Justice, and Jeff Dixon, alleging that the defendants violated Carter's Fourth Amendment right to be free from unreasonable seizures. The district court severed the claims against Officer Rivet and held a jury trial. The jury returned a special verdict, finding (1) that Officer Rivet used excessive force in this incident, but also (2) that Officer Rivet's conduct was objectively reasonable in light of clearly established law. Based on these findings, the district court dismissed the § 1983 claims against Officer Rivet on qualified immunity grounds.

Following the dismissal of the § 1983 claims against Officer Rivet, the remaining defendants moved for summary judgment,

3

invoking qualified immunity as a shield to further proceedings.  On July 24, 2003, the district court, in a one-page order without accompanying decision, denied the motion with respect to defendants Chief Prator and the City of Shreveport.  That decision is the subject of the instant appeal.

## II.  Jurisdiction

As an exception to the principle that interlocutory review of district court decisions is not permitted, this court has jurisdiction to review denials of qualified immunity with respect to government officers sued in their individual capacities, so long as that determination turns on a matter of law.  See Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815-16, 86 L.Ed.2d 411 (1985); Feagley v. Waddill, 868 F.2d 1437, 1439 (5th Cir. 1989).[3]  Our authority to review a judgment on an interlocutory basis does not, however, extend to all entities or all § 1983 claims.  As relevant here, "[m]unicipal governments may not raise immunity defenses on interlocutory appeal."  Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 392 (5th Cir. 2000)

---

[3]    As this court has explained before, "the only question that we can answer on interlocutory appeal is whether or not a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law."  Simmons v. City of Paris, Tex., 378 F.3d 476, 479 (5th Cir. 2004) (internal citations and quotations omitted).
This practice of interlocutory review reinforces the principles underlying qualified immunity: protection of public officials from money damages as well as "the general costs of subjecting officials to the risk of trial -- distraction of officials from their official governmental duties, inhibition of discretionary action, and deterrence of able people from public service."  Mitchell, 472 U.S. at 526, 105 S. Ct. at 2815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S. Ct. 2727, 2737, 73 L.Ed.2d 396 (1982)).

4

(citing <u>Nicoletti v. City of Waco</u>, 947 F.2d 190, 191 (5th Cir. 1991) (determining that a suit against a municipal officer in his official capacity is a suit against the municipality itself such that interlocutory appeal is barred)).

Here, we have jurisdiction to review the district court's denial of summary judgment to Chief Prator in his individual capacity.  The Chief's motion challenged plaintiffs' evidence of failure to train or supervise, causation, pattern of unconstitutional conduct, and deliberate indifference, as well as whether the Chief's conduct was objectively unreasonable.  Because, on this record, the district court's determinations can be reviewed as a matter of law, we have appellate jurisdiction over Chief Prator's individual claim of qualified immunity.  However, as the right to interlocutory review does not extend to municipalities or municipal officers sued in their official capacities, we must DISMISS the claims of both the City of Shreveport and of Chief Prator in his official capacity.

### III.  Standard of Review

We review the district court's summary judgment decision <u>de novo</u>, using the same standard as the district court.  <u>Keenan v. Tejeda</u>, 290 F.3d 252, 258 (5th Cir. 2002); Fed. R. Civ. P. 56.  More specifically, "[w]hether a government official is entitled to qualified immunity, to the extent that it turns on a question of law, is a question that we review <u>de novo</u> . . . ."  <u>Keenan</u>, 290

5

F.3d at 261 (citing <u>Kennedy v. Tangipahoa Parish Library Bd. of Control</u>, 224 F.3d 359, 376-77 (5th Cir.2000)). In making this determination, we review the facts in the light most favorable to the non-moving party. <u>In re Millette</u>, 186 F.3d 638, 641 (5th Cir. 1999). Thus, in this case we review the facts in the light most favorable to the plaintiffs.

## IV. Qualified Immunity

The plaintiffs allege that Chief Prator violated Carter's Fourth Amendment rights because he acted in an objectively unreasonable manner by failing to train Officer Rivet properly. Before this court — or any court — can adjudicate the merits of this claim, the plaintiffs must overcome the bar of qualified immunity. Chief Prator argues that the district court should have granted him qualified immunity because (1) his actions were objectively reasonable; (2) the plaintiffs cannot meet their burden on the failure to train claim; and (3) this case does not meet this circuit's standards for the "single incident exception" for supervisory liability.

When applicable, qualified immunity protects public officials from both recovery of damages <u>and trial</u>.[4] As a

---

[4] Because we lack jurisdiction to review the district court's determinations as to the City of Shreveport at this time, we are unable to address the claims that the City of Shreveport acted with deliberate indifference to Carter's constitutional rights or that the City of Shreveport allowed violations of clearly established law by pursuing a policy of inadequate training or supervision. Our decision today, however, may give the district court occasion to revisit its unexplained, unreasoned denial of summary judgment to the municipality and to Chief Prator in his official capacity.

prerequisite, a plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995) (citing Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983)). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001) (quoting Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987)). To establish § 1983 liability against supervisors, the plaintiff must show that: (1) the police chief failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989); Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003).

Plaintiffs allege that Chief Prator failed to train Officer Rivet sufficiently. Chief Prator responds that this issue is foreclosed in his favor because the jury verdict in Officer Rivet's trial found Rivet's conduct objectively reasonable. Chief Prator is incorrect. The jury, after all, found that Officer Rivet violated Carter's constitutional rights, even though it also accepted Officer Rivet's defense that his conduct was objectively reasonable. Under such circumstances, Chief Prator remains vulner-

7

able to a failure to train claim because the plaintiffs may be able to demonstrate that by his failure to train or supervise adequately, he both caused Carter's injuries and acted deliberately indifferent to violations of Fourth Amendment rights by Shreveport police officers, including Officer Rivet. See, e.g., Snyder v. Trepagnier, 142 F.3d 791, 800 (5th Cir. 1998) (quoting Melear v. Spears, 862 F.2d 1177, 1187-88 (5th Cir. 1989) (Higginbotham, J., concurring) ("It is possible for the jury to find that, although the actual circumstances of the search did not justify the officer's behavior, the circumstances that appeared to the officer would have justified a search. . . . It might be possible for the jury to resolve factual ambiguities so as to conclude that a constitutional violation took place, even though it is not possible for the jury to resolve factual ambiguities so as to conclude that the violation was the product of an objectively unreasonable mistake.") (internal citations and alterations omitted)). The jury's findings are neither inconsistent nor preclusive for qualified immunity purposes.

Nevertheless, even assuming that lack of training "caused" Carter's injuries, the plaintiffs have not provided sufficient evidence of either Prator's failure to train (the first requirement) or his deliberate indifference to Carter's constitutional rights (the third requirement) to create a triable fact issue. See Burge, supra. A plaintiff seeking recovery under a failure to train or supervise rationale must prove that the police

8

chief failed to control an officer's "known propensity for the improper use of force."  See, e.g., Sims v. Adams, 537 F.2d 829, 832 (5th Cir. 1976); Chestnut v. City of Quincy, 513 F.2d 91, 92 (5th Cir. 1975).  Moreover, to prove deliberate indifference, a plaintiff must demonstrate "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." Burge, 336 F.3d at 370 (internal citations and quotations omitted). We discuss the summary judgment evidence concerning each of these criteria in turn.

## A.  Inadequate Training

The standard applicable to failure to train allegations against supervisors is based on that for municipal liability.[5] Thus, for a supervisor to be liable for failure to train, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform."  Snyder, 142 F.3d at 798 (quoting City of Canton, 489 U.S. at 390-91, 109 S. Ct. at 1205-06).  In this inquiry, mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability.  Id.  But the plaintiffs have not even presented this much evidence.  Officer Rivet was trained extensively by the State of Louisiana, and his curriculum included additional instruction in the use of force from

---

[5]    See Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 452-54 & nn.7-8 (5th Cir. 1994).

9

the State of Louisiana Peace Officer Standards and Training Council. In all, Officer Rivet received hundreds of hours of professional instruction.

In addition, for liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective. See Benavides v. County of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). Here, plaintiffs allege three deficiencies: (1) that the Chief's program failed to train officers for crossing guard duty, specifically, how to perform as a crossing guard without resorting to deadly force; (2) that the officers were not trained properly in the Tennessee v. Garner[6] standard and the requirement to issue a warning before employing deadly force; and (3) that the training program did not teach officers the correct meaning of the term "deadly force." All of these claims are unavailing.

First, the assertion relating to crossing guard duties will not support a failure to train claim. Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim. In City of Canton, the Supreme Court specifically warned against this type of artful pleading. 489 U.S. at 391, 109 S. Ct. at 1206 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip

---

[6]    471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985).

10

him to avoid the particular injury-causing conduct.") (emphasis added).   Officer Rivet's substantial instruction in the use of force and his broad-based law enforcement training (including traffic stops, directing traffic, and general roadside conduct) prepared him for what occurred on the morning in question.  But even assuming that crossing guard duty requires such special skills as to transcend Canton's concern about overly narrow pleading, the plaintiffs have failed to produce evidence substantiating those skills and the nature of the necessary, but unprovided, instruction.

Second, the plaintiffs have failed to create a fact issue concerning whether Chief Prator offered insufficient or inadequate training in the use of deadly force under the Tennessee v. Garner standard, or whether Shreveport police officers do not understand the meaning of deadly force.  The plaintiffs' strongest evidence for this claim is the deposition testimony of the current police chief, Steve Roberts (who replaced Chief Prator), and Gary Smith, head of internal affairs:  neither man was personally able to recall the exact standard mandated by Tennessee v. Garner.  The testimonial embarrassment of two supervisors, however, does not prove inadequacy in the Shreveport Police Department's training on deadly force.  See Snyder, 142 F.3d at 798 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."

11

(quoting City of Canton, 489 U.S. at 390-91, 109 S. Ct. at 1205-06)).[7] For this reason, even assuming that Officer Rivet's conduct on the morning in question constituted an improper use of deadly force, this lone incident is insufficient to pierce the qualified immunity enjoyed by Chief Prator.

Third, Chief Prator supplied overwhelming evidence that his officers, including Officer Rivet, were adequately trained in the use of deadly force. The City of Shreveport Police Department has a comprehensive policy on the use of deadly force (R. Doc. No. 154, Exhibit D, § IV.A.; Shreveport Police Department General Order SPD 601.6), and all officers undergo training about the Tennessee v. Garner standard (R. Doc. No. 154, Exhibit C, ¶7 (Affidavit of Louisiana Certified Police Instructor)).[8] This thorough training regimen was not disputed by the plaintiffs' scant evidence.

## B. Deliberate Indifference

Additionally, plaintiffs fall short in attempting to demonstrate a pattern of unconstitutional conduct on the part of Officer Rivet. Their proffered evidence of pattern requires an excessively high level of generality, as it consists of a handful

[7] The same logic disposes of the plaintiffs' allegation that Shreveport police officers insufficiently understand the meaning and use of "deadly force."

[8] Included in this policy and training is the nostrum that officers should warn before using deadly force when feasible, as compelled by Tennessee v. Garner. Compare id., 471 U.S. at 11-12, 105 S. Ct. at 1701, with R. Doc. No. 154 (Exhibit D) at 2. Plaintiffs' insistence on a warning does not square with Tennessee v. Garner in the fast-moving scenario that Rivet confronted.

12

of tangentially related incidents, some of which do not even involve Officer Rivet.

First, plaintiffs supply claims of past incidents in which Officer Rivet brandished and pointed his firearm toward unarmed African-Americans while making routine traffic stops. Rivet's alleged propensity for displaying his firearm is fundamentally different from a propensity to use deadly force in the course of ordinary traffic stops. We do not deny that this evidence appears to reflect badly on Officer Rivet's judgment, but it proves nothing about Officer Rivet's actual use of deadly force in the much different context of this case, nor is it relevant to whether Chief Prator was on notice that Officer Rivet might use excessive force when confronted with a speeding vehicle while standing in the street directing traffic. Further, the Supreme Court has repeatedly observed that traffic stops (even those far more innocuous than the one at issue in this case) are inherently dangerous. See Maryland v. Wilson, 519 U.S. 408, 413, 117 S. Ct. 882, 885, 137 L.Ed.2d 41 (1997); Michigan v. Long, 463 U.S. 1032, 1049 (1983) ("[R]oadside encounters between police and suspects are particularly hazardous."); see also United States v. Baker, 47 F.3d 691, 694-95 (5th Cir. 1995).

The second piece of evidence supplied by plaintiffs represents the only other instance in which Officer Rivet used deadly force. In that case, a court dismissed the § 1983 claim filed by Patrick Morris, whom Rivet shot. Because Morris was

13

convicted for assault and battery of Officer Rivet during that incident, the district court awarded Rivet summary judgment on the ground that Rivet's conduct could not amount to excessive force as a matter of law. Morris v. Rivet, No. 99-CV-0288, Mem. Ruling at 6-7 (W.D. La. Mar. 17, 2000).[9] If anything, this incident demonstrates that Officer Rivet acted in conformity with the substantial training he has received on the use of deadly force.[10]

Finally, no competent summary judgment evidence supports two other claims of unconstitutional deadly force. The plaintiffs provide only newspaper articles — classic, inadmissible hearsay. Even if proven up properly, these allegations do not form a pattern of unconstitutional activity of which Chief Prator should have been aware. See, e.g., Pineda v. City of Houston, 291 F.3d 325, 329 (5th Cir. 2002) (finding eleven incidents insufficient to establish a pattern of unconstitutional events).

---

[9] Similarly, the complaint filed by Kara Lewis, who accuses Officer Rivet of improperly brandishing his weapon during the same incident, could not have placed Chief Prator on notice of any problems within the department of using deadly force without adequate warning. Lewis was not physically harmed during the altercation, and the court found that Officer Rivet did not employ excessive force when he shot Morris.

[10] Plaintiffs cite another incident involving the use of deadly force by the Shreveport Police Department. In that case, the jury sitting in the accompanying § 1983 suit specifically found that the officer involved did not use excessive force and therefore did not commit a constitutional violation. See Harris v. City of Shreveport, No. 00-31276, 69 Fed. Appx. 657, 2003 WL 21355841 (5th Cir. 2003). This constitutional use of deadly force cannot provide a link to any purported chain of unconstitutional conduct.

14

## C. "Single Incident" Exception

Plaintiffs' last claim is that this case fits within the narrow scope of the "single incident" exception allowing municipal liability. See Bryan County v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997). In that case, the Supreme Court clarified previous decisions that allow, in certain extreme circumstances, a single act by a municipal employee to form the basis of municipal liability apart from a pattern of unconstitutional activity. To rely on this exception, a plaintiff must prove that the "highly predictable" consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the "moving force" behind the constitutional violation. Brown v. Bryan County, 219 F.3d at 461. This circuit, in conformity with the Supreme Court's jurisprudence,[11] has been highly reluctant to permit this exception to swallow the rule that forbids mere respondeat superior liability. See, e.g., Burge, 336 F.3d at 373; Pineda, 291 F.3d at 334-35, following Monell v. New York Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

A cursory comparison of the failure to train charge in Brown with the facts here finds plaintiffs' case wanting. In

---

[11]     It must be noted that the Supreme Court denied liability in Brown, where the evidence failed to establish that the sheriff's isolated failure to perform adequate screening reflected deliberate indifference to high risk that a deputy would use excessive force. This court's decision on remand turned on a separate claim involving very unusual facts regarding failure to train.

Brown, the sheriff hired as a deputy one of his relatives who had multiple prior arrests and convictions for violent crimes and other reckless behavior, as well as an outstanding arrest warrant. The deputy received no training whatsoever, and, without any provocation, he used a violent "arm bar" technique to take down an unarmed suspect. Further, the deputy had been involved in a significant number of "takedown" arrests.[12] By contrast, Chief Prator oversaw a significant training regimen for Officer Rivet and the other police officers under his command. There is no evidence that Officer Rivet has been involved in any cases involving the improper use of deadly force. Neither the "unmistakable culpability" of Chief Prator nor the "clearly connected causation" required by Brown, see 219 F.3d at 461, appears in this case.

## V. State Law Claims Against Chief Prator

Plaintiffs further allege claims under Louisiana state and constitutional law. Chief Prator defends on the basis of Louisiana's provisions for immunity. The Chief is correct. Louisiana applies qualified immunity principles to state constitutional law claims based on "[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983." Moresi v. Dep't of Wildlife and Fisheries, 567 So. 2d 1081, 1093 (La. 1990). Inasmuch

---

[12] For a more detailed factual discussion, see Brown v. Bryan County, 219 F.3d 450, 454-55 (5th Cir. 2000) (on remand from the Supreme Court of the United States).

16

as the plaintiffs' claims under state constitutional law parallel entirely the § 1983 allegations, Chief Prator enjoys the privilege of qualified immunity.

While <u>Moresi</u> does not apply to the plaintiffs' tort allegations against Chief Prator, Louisiana's discretionary immunity statute does. See LA. REV. STAT. ANN. § 9:2798.1 (conferring immunity from suit upon state officers when the allegations are predicated "upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties"). The Supreme Court of Louisiana considers the immunity conferred on state public officials by this law to be "essentially the same as the immunity conferred on the federal government by the exception to the Federal Tort Claims Act (FTCA)." <u>Jackson v. State ex rel. the Dep't of Corrections</u>, 785 So. 2d 803, 809 (La. 2001). Louisiana courts have adopted a test analogous to the FTCA discretionary function test in determining whether an official is protected by the statute, namely, (1) whether a state law, regulation, or policy specifically prescribes the officer's course of action; and (2) whether the challenged action is grounded in political, economic, or social policy. <u>See</u> <u>Fowler v. Roberts</u>, 556 So. 2d 1, 15 (La. 1990) (adopting the FTCA discretionary function test reiterated in <u>Berkovitz v. United States</u>, 486 U.S. 531, 536-37, 108 S. Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988)). Under part one, if the official has no alternatives, the exception

17

does not apply.  Williams v. City of Monroe, 658 So. 2d 820, 828 (La. Ct. App. 2d Cir. 1995).  Under part two, the court must determine whether, if the action involves selection among alternatives, the choice was policy-based.  Id.  An officer's use of policy-based discretion protects him from state tort liability.

Chief Prator had a wide variety of options for training officers under his command; no law, regulation, or policy of the State of Louisiana explicitly directed his course of action. Further, his training and supervisory decisions are grounded in policy considerations; he had to assess the community's needs, contemplate the types of situations his officers would face, and ultimately reconcile his training decisions with the department's budget.  Because his actions meet both prongs of the discretionary immunity test, Chief Prator is immune from the plaintiffs' state law tort claims.

## VI.  Conclusion

The plaintiffs surely mourn the loss of Undray Carter. However, the evidence they provided is insufficient to overcome the qualified immunity protecting Chief Prator.  The district court should have recognized the plaintiffs' failure of proof in the first instance.

For the reasons stated above, we therefore DISMISS the appeals of the City of Shreveport and of Chief Prator in his official capacity for lack of jurisdiction; REVERSE the district

18

court's denial of summary judgment to Chief Prator in his individual capacity; and RENDER summary judgment for Chief Prator. The case is REMANDED for proceedings consistent with this opinion.

**DISMISSED IN PART; REVERSED IN PART; AND RENDERED IN PART. REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**