# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51410

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2018

Lyle W. Cayce
Clerk

ALEJANDRO LEAL,

Plaintiff-Appellant

v.

RICHARD WILES, Sheriff, El Paso County, Texas; JOSE MENDIZABAL, Officer, El Paso Sheriff's Department; FNU SANCHEZ, Gang Intelligence Officer, El Paso Sheriff's Department,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:15-CV-361

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Alejandro Leal, a pretrial detainee in the El Paso County Detention Facility, filed this 42 U.S.C. § 1983 action *pro se* against Sheriff Richard Wiles in his official capacity, Officer Jose Mendizabal in his official and individual capacities, and Officer Carlos Sanchez in his official and individual capacities, based on an assault that occurred while he was in their custody. Adopting the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

magistrate judge's recommendations, the district court dismissed Leal's claim against Sherriff Wiles in his official capacity for failure to state a claim and granted summary judgment in favor of Officers Mendizabal and Sanchez in their individual capacities on the basis of qualified immunity. Finding no error, we affirm.

I.

When Alejandro Leal arrived at the jail, two detectives advised the booking officer, who noted as such in Leal's jail records, that Leal was to be kept separate from ("K-S-F") Barrio Azteca gang members because that gang had issued a green light, or a sanctioned hit, on Leal. Leal was placed in administrative segregation, and the rosters, floor cards, and computer database reflected his K-S-F status to ensure his safety.

On May 8, 2015, Officer Jose Mendizabal asked Leal, as well as other inmates in his cell block, if he wanted to go to recreation to which Leal answered affirmatively. Officer Mendizabal escorted Leal and another inmate from his cell block to the guard station where he advised the inmates to stand while he went to retrieve other inmates for recreation. At this time, Officer Carlos Sanchez, a gang intelligence officer, was inside the guard station. Officer Mendizabal returned with one inmate from cell block four-thirty and two inmates, who turned out to be Barrio Azteca gang members, from cell block four-eighty. Officer Mendizabal then placed the inmates on the elevator and stated Leal's name aloud, and the two Barrio Azteca inmates began to assault Leal. Leal suffered a laceration to his head and contusions to his head, face, and neck.

Pursuant to 42 U.S.C. § 1983, Leal sued Sherriff Wiles in his official capacity, Officer Mendizabal in his official and individual capacities, and Officer Sanchez in his official and individual capacities, alleging inadequate

No. 16-51410

staffing, training, and supervision, violations of policies and procedures, and deliberate indifference to his safety. Leal sought declaratory relief and compensatory, punitive, and nominal damages.

Defendants moved to dismiss Leal's complaint, and the court, adopting the magistrate judge's report and recommendation, granted Defendants' motion in part, dismissing, among other things, Leal's claim against Sherriff Wiles in his official capacity for failure to state a claim.[1] Thereafter, the parties filed cross-motions for summary judgment, and the court, adopting the magistrate's report and recommendation, ruled in favor of Officers Mendizabal and Sanchez finding that the officers were entitled to qualified immunity because the record did not show that either officer knew of Leal's K-S-F status prior to the assault. Leal appeals.

## II.

We begin with Leal's argument that the court erred in dismissing his section 1983 claim against Sherriff Wiles for failure to state a claim. This court reviews such dismissals de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.[2]

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[3] Rather, an official not personally involved in the acts that deprived the plaintiff of his constitutional rights, as here, is liable under section 1983 if: "1) the [supervisor] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's

---

[1] The court additionally dismissed Leal's Eighth Amendment claim because Leal was a pretrial detainee at the time of the assault and Leal's claims against Officers Mendizabal and Sanchez in their official capacities. Leal does not challenge those findings on appeal.

[2] *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013).

[3] *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001) (internal quotation marks omitted).

No. 16-51410

rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[4] "In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'"[5] With respect to the third prong, deliberate indifference generally requires "a plaintiff to demonstrate 'at least a pattern of similar violations' arising from training [or supervision] that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'"[6]

Supervisory liability can also be established without direct participation in the alleged events "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[7] An official policy is:

1.    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2.    A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy. Actual or constructive knowledge of such custom must be attributable to the [entity] or to an official to whom that body ha[s] delegated policy-making authority.[8]

---

[4] *Cozzo v. Tangipahoa Par. Council–President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002) (quoting *Thompson*, 245 F.3d at 459).

[5] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

[6] *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson*, 245 F.3d at 459).

[7] *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal quotation marks omitted).

[8] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

As with deliberate indifference, "proof of a custom or practice requires more than a showing of isolated acts."[9]

The district court ruled that Leal "alleged no facts to establish that the detention center was not adequately staffed or that the officers were not adequately trained or supervised in May 2015, to establish the obviousness to Sherriff Wiles that there was a risk of serious injury to any of the detainees from the level of staffing, to establish that the officers were inadequately trained or supervised, or to establish that any such inadequacy was the 'moving force' behind [Leal's] assault."

Leal contends this was in error because a "major rol[e] of [his] assault had to do with inadequate training," as admitted by Officer Mendizabal and Commander Marco Vargas. Additionally, Leal argues that understaffing was the "moving force behind [his] assault," because on "the day of [his] assault there [were] only two officers one in the guard station and one doing the escorts," as Officer Mendizabal and Commander Vargas also admit. Lastly, Leal asserts that "there is a major lack of policy and procedure to protect inmates in protective custody," and "there is no said policy and procedure to protect inmates from assaults."[10]

---

[9] *Burge*, 336 F.3d at 370.

[10] Leal asserts similar arguments in his reply brief. Leal cites *Saunders v. Chatham County, Board of Commissioners*, 728 F.2d 1367 (11th Cir. 1984) (per curiam) to support his understaffing argument. In *Saunders*, the Eleventh Circuit affirmed a jury verdict that, among other things, found "evidence that the jail facilities were understaffed and with inadequate personnel to monitor inmate activity, and that the particular pod of the jail in which plaintiff was lodged was understaffed on the occasion when he was injured." *Id.* at 1368. *Saunders* represents the outcome that Leal seeks but does little to show that Leal's allegations, taken as true and viewed in the light most favorable to him, demonstrate that Sherriff Wiles was deliberately indifferent to Leal's constitutional rights.

Leal additionally cites *Camilo-Robles v. Hoyos* for the proposition that "a supervisor . . . may be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another" and that "supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior." 151 F.3d 1, 7 (1st Cir. 1998). The court continued, a supervisor "may be liable for the foreseeable

No. 16-51410

We conclude that the court did not err in dismissing Leal's claim against Sherriff Wiles for failure to state a claim. Leal fails to allege sufficient facts to establish that there was such a lack of adequate staff, training, and supervision at the time of Leal's assault that it would be obvious to Sherriff Wiles that there was a substantial risk to detainees. Rather, Leal's allegations concern a single instance in which inadequate staffing, training, and supervision resulted in his assault. More is required for section 1983 liability to attach.[11] The court therefore committed no error.

## III.

In addition, Leal argues that the court erred in granting summary judgment in favor of Officers Mendizabal and Sanchez. "This court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity."[12] Summary judgment must be

---

consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness." *Id.* (internal quotation marks omitted). Our finding that Leal's allegations fail to show deliberate indifference comports with *Camilo-Robles*.

Lastly, Leal cites *Jett v. Dallas Independent School District* to argue that a custom does not specifically have to be authorized or ordered by a final policymaker. 491 U.S. 701, 737 (1989). This principle is not relevant to the disposition of this case.

[11] *Zarnow*, 614 F.3d at 170 ("[T]his Court has previously rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train."); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005) ("We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference."); *Burge*, 336 F.3d at 370 ("And just as proof of a custom or practice requires more than a showing of isolated acts, proof of deliberate indifference, generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" (quoting *Thompson*, 245 F.3d at 459)).

We do not suggest that a single incident, as opposed to a pattern of violations, can never suffice to demonstrate deliberate indifference. The "single-incident exception" is a "narrow one" that "we have been reluctant to expand." *Burge*, 336 F.3d at 373. "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Roberts*, 397 F.3d at 295 (quoting *Brown v. Bryan Cty.*, 219 F.3d 450, 461 (5th Cir. 2000)). Leal does not fall within this exception.

[12] *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (internal quotation marks omitted).

granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] This court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.[14] "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[15]

The Fourteenth Amendment's Due Process Clause protects the rights of pretrial detainees.[16] While "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners," not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[17] A prison official must have a sufficiently culpable mind, and the measure of that culpability is the standard of subjective deliberate indifference enunciated in *Farmer*.[18] A prison official acts with deliberate indifference only if he subjectively "knows of and disregards an excessive risk to inmate . . . safety."[19] That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[20]

---

[13] FED. R. CIV. P. 56(a).

[14] *Hanks*, 853 F.3d at 743.

[15] *Id.* at 744 (internal quotation marks and citation omitted).

[16] *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).

[17] *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (internal quotation marks and citations omitted).

[18] *Id.* at 837; *see also Hare*, 74 F.3d at 648 ("Though *Farmer* dealt specifically with a prison official's duty under the Eight Amendment to provide a convicted inmate with humane conditions of confinement, we conclude that its subjective definition of deliberate indifference provides the appropriate standard for measuring the duty owed to pretrial detainees under the Due Process Clause.").

[19] *Farmer*, 511 U.S. at 837.

[20] *Id.*

No. 16-51410

"Deliberate indifference is an extremely high standard to meet."[21] The standard "requires a showing of more than negligence or even gross negligence."[22] Consequently, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."[23]

A.

Beginning with Officer Mendizabal, the court determined the following from the parties' summary judgment evidence: (1) Leal's protected K-S-F status and the green light were in the computer database and listed on the recreation roster; (2) Officer Mendizabal should have checked the information on the recreation roster concerning any K-S-F notes or green lights before taking inmates out for recreation; (3) Officer Mendizabal failed to do so, and was disciplined for his error; and (4) A reprimand letter indicates that Officer Mendizabal had a recreation roster that listed Leal's K-S-F status and the green light, but the letter does not indicate that Officer Mendizabal read the roster.

The court additionally acknowledged that Officer Mendizabal was aware of the general risk of transporting lockdown inmates together, yet noted that he took precautions—*i.e.*, Officer Mendizabal ensured that the inmates were handcuffed and stood between them in the elevator. The court stressed that Officer Mendizabal tried to stop the attack by placing himself between the assailants and Leal. Based on this evidence, the court concluded that no reasonable fact finder could find that Officer Mendizabal was deliberately indifferent to Leal's safety.

---

[21] *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[22] *Estate of Davis ex. rel McCully*, 406 F.3d at 381.

[23] *Id.* (internal quotation marks omitted).

No. 16-51410

Leal argues that Officer Mendizabal was aware of or should have been aware of a substantial risk of serious harm because his protected status was noted in the computer database and recreation roster. Leal additionally points out that Officer Mendizabal "admits to not hav[ing] checked for flags such as keep separate from Barrio Azteca and green light Barrio Azteca" and acknowledges that the "inmates from [four-eighty] are gangster" and "inmates are [on] lock down for different reasons." Leal insists that Officer Mendizabal had a chance to draw the inference that there was a substantial risk of serious harm and should not escape liability because he was "to[o] busy and under pressure."

We conclude that Leal fails to show that Officer Mendizabal acted with deliberate indifference. No direct evidence indicates that Officer Mendizabal knew of Leal's protected status prior to his assault. And the circumstantial evidence does not meet the high standard of deliberate indifference. Though Sherriff Wiles's reprimand letter indicates that Officer Mendizabal had a recreation roster that listed Leal's K-S-F status and the green light, the record falls silent on whether Officer Mendizabal read that recreation roster and thus knew of Leal's protected status prior to the assault. To be sure, Officer Mendizabal should have checked the recreation roster; however, liability attaches only if Officer Mendizabal knew—not merely should have known—about the risk.[24]

This case, however, presents a closer question in light of Officer Mendizabal's observations that inmates are on lock down for different reasons, including gang affiliation, and that the inmates he escorted appeared to be gang members. Leal's argument that Officer Mendizabal had a chance to "draw

---

[24] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528 (5th Cir. 1999); *see also Farmer*, 511 U.S. at 837.

9

the inference" efforts to suggest that Officer Mendizabal "refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist."[25] In *Farmer*, the Court, noting such evidence would not permit a prison official to escape liability, provided examples as to what it meant by "refus[ing] to verify" or "declin[ing] to confirm"; that is,

> when a prison official is aware of a high probability of facts indicating that one prisoner has planned an attack on another but resists opportunities to obtain final confirmation; or when a prison official knows that some diseases are communicable and that a single needle is being used to administer flu shots to prisoners but refuses to listen to a subordinate who he strongly suspects will attempt to explain the associated risk of transmitting disease.[26]

Here, the record does not indicate that Officer Mendizabal resisted an opportunity to confirm or refused to listen to a subordinate to ultimately disregard strong indications of a substantial risk to Leal's safety.[27] Rather, and as the record shows, Officer Mendizabal did not check the recreation roster because he was in a "hurry." This, without more, does not establish that Officer Mendizabal knew of and disregarded a substantial risk of serious harm to Leal.[28] Therefore, the court committed no error in granting summary judgment in favor of Officer Mendizabal.

## B.

The court, in granting summary judgment in favor of Officer Sanchez, concluded that the evidence is undisputed that Officer Sanchez was not aware of Leal's K-S-F status prior to his assault. Additionally, the court observed that

---

[25] *Farmer*, 511 U.S. at 837, 843 n.8.

[26] *Id.* at 843 n.8.

[27] *Vasquez v. Livingston*, 617 F. App'x 350, 351 (5th Cir. 2015) (per curiam) ("The existence of an objective risk to the inmate's safety alone is insufficient to establish that a particular defendant disregarded that risk." (citing *Farmer*, 511 U.S. at 837–38)).

[28] *See, e.g.*, *Olabisiomotosho*, 185 F.3d at 526, 528 (Protections under the Fourteenth Amendment are not "triggered . . . by negligent inaction.").

though Officer Sanchez was part of the gang intelligence unit, he did not know every gang member or every K-S-F status/green light; that working in the guard station, Officer Sanchez did not see who Officer Mendizabal was transporting to recreation; and that Officer Sanchez is not expected to determine whether flags or conflicts exist for those being transported to recreation.

Leal argues that Officer Sanchez should have known of Leal's K-S-F status because he was in charge of operations on the fourth floor and he was a gang intelligence officer. Leal additionally contends that Officer Sanchez had time to warn Officer Mendizabal of Leal's K-S-F status because Officer Mendizabal left Leal and other inmates in front of the guard station while he went to get other inmates for recreation.

We conclude that the court did not err in granting summary judgment in favor of Officer Sanchez. Leal's arguments do not change the record before us—that Officer Sanchez did not know Leal's K-S-F status or the green light prior to the assault. Thus, Officer Sanchez did not "know[] of and disregard[] an excessive risk" to Leal's safety.[29] Leal's argument that Officer Sanchez violated his constitutional rights because he *should have known* Leal's status since it was available in the computer database and other jail records also fails, as "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."[30]  Accordingly, the court did not err in granting summary judgment in favor of Officer Sanchez.

---

[29] *Farmer*, 511 U.S. at 837.

[30] *Id.* at 838.

No. 16-51410

IV.

We affirm the district court's decisions, adopting the magistrate's recommendations, to dismiss Sherriff Wiles for failure to state a claim and to grant summary judgment in favor of Officers Mendizabal and Sanchez on the basis of qualified immunity.[31]

---

[31] Leal has also filed a motion for appointment of counsel. Because he has not shown that the appeal presents exceptional circumstances warranting the appointment of appellate counsel, his motion is denied. *See Cooper v. Sheriff, Lubbock Cty.*, 929 F.2d 1078, 1084 (5th Cir. 1991).