# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-20281

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2024

Lyle W. Cayce
Clerk

Shanita Terrell,

*Plaintiff—Appellant*,

*versus*

Harris County; Michael Hines; Mark Cannon; Ed
Gonzalez,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-302

———————————————————

Before Barksdale, Southwick, and Graves, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

Appellant Shanita Terrell alleges that two Harris County Sheriff's Office ("HCSO") deputies forced her into a patrol car. Later, she alleges, one of the deputies sexually assaulted her. The district court granted qualified immunity to the deputy who was not accused of sexual assault. On appeal, Terrell fails to establish that the deputy violated a clearly established constitutional right. She also fails to allege the type of pattern of deliberate indifference required to establish liability for the County or its Sheriff. We AFFIRM.

No. 23-20281

# I. BACKGROUND

## a. Factual background

We begin with the allegations of the operative complaint, which at the dismissal stage we accept as true and construe in the light most favorable to Terrell. *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022).

Terrell spent the evening of February 23, 2020, at The Address, a bar in Houston where her cousin works. When she left, "there was visibly and audibly something wrong with her and she was not in her usual state of mind." At some point, Terrell encountered off-duty HCSO Deputies Michael Hines and Mark Cannon. Hines and Cannon worked side jobs at The Address and were in HCSO uniforms. HCSO policy allows deputies to wear their uniforms and use HCSO equipment and patrol vehicles while working off-duty side jobs.

The deputies ordered Terrell into Hines's patrol vehicle, telling her they were going to take her home. Terrell initially protested but ultimately got in, believing she was either under arrest or would be arrested if she continued to resist. The complaint contains no allegations as to what happened immediately afterward.

Terrell awoke the next morning at home and felt pain in her vaginal area. She went to the hospital, where a rape kit was administered. A DNA test revealed that semen in her underwear matched Deputy Hines. Terrell had no memory of having sex with him. She later came to suspect that someone had slipped Rohypnol, also known as "roofies," into her drink at The Address. Roofies are known to be used by sexual predators to incapacitate their victims.

2

No. 23-20281

In August 2021, eighteen months after the incident, Hines was charged with sexually assaulting Terrell.[1]

### b. Procedural background

Terrell sued Deputy Cannon, Deputy Hines, Harris County Sheriff Ed Gonzalez, and Harris County under 42 U.S.C. § 1983. Hines was served but never responded, and Terrell later voluntarily dismissed her claims against him.

Terrell's first amended complaint alleged that Cannon violated her Fourth and Fourteenth Amendment rights by forcing her into Hines's patrol vehicle. She alleged that Sheriff Gonzalez was liable as the deputies' supervisor and that Harris County was liable for inadequately training the deputies.

The district court dismissed the first amended complaint for failing to state a claim. Terrell then filed a second amended complaint. The district court dismissed it with prejudice, concluding that Terrell's allegations were still deficient. This appeal followed.[2]

## II. LEGAL STANDARD

Dismissal for failure to state a claim is reviewed de novo. *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). To state a claim, a

---

[1] Terrell appended documents to her opening brief indicating that Hines pled guilty to sexually assaulting Terrell. The parties disagree as to whether it is proper for the court to consider those documents. We do not address that issue here because Hines's plea is ultimately not relevant to the analysis of Terrell's claims.

[2] In addition to the issues we address, Terrell argues that qualified immunity "should no longer exist." The law on qualified immunity is binding under decades of Supreme Court precedent. We leave to the Supreme Court "the prerogative of overruling its own decisions." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (citation omitted).

plaintiff's allegations need not be detailed but they must support a claim to relief that is plausible on its face. *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021). The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). We "do not accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023).

Any person whose constitutional rights are violated by an officer acting under color of law may sue that officer for money damages. 42 U.S.C. § 1983. But "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The plaintiff has the burden to show that her claim is not barred by qualified immunity. *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016).

## III. DISCUSSION

### a. Qualified immunity

We may address either qualified immunity prong first, and we can affirm the district court on either if Terrell fails to make the required showing. *al-Kidd*, 563 U.S. at 735. Terrell contends that Cannon's actions were clearly established as unconstitutional under the Fourth Amendment. The argument goes to her prong-two qualified immunity burden. *Id.* at 741. So, we start there.

To satisfy prong two, Terrell must point to legal precedent that puts the wrongfulness of Cannon's actions "beyond debate." *Id.* Such precedent must speak to "the violative nature of [the] particular conduct" and "the specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

No. 23-20281

Terrell fails to point to any precedent meeting that standard. She first points to *Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021). But *Gomez* was decided in November 2021. It could not have clearly established the unconstitutionality of Cannon's actions, which allegedly occurred in February 2020. *See Anderson v. Valdez*, 845 F.3d 580, 607 (5th Cir. 2016) (excluding "post-conduct cases").

To a lesser extent, she points to *United States v. Sharpe*, 470 U.S. 675 (1985) and *Katz v. United States*, 389 U.S. 347 (1967). *Sharpe* concerned a prolonged detention during an investigatory traffic stop. *Sharpe*, 470 U.S. at 677–79. *Katz* concerned surveillance of calls made from a public telephone booth. *Katz*, 389 U.S. at 348. Those cases certainly set parameters for identifying a Fourth Amendment violation. But neither establishes the "violative nature" of Cannon's "particular conduct" or speaks to the "specific context" of Terrell's allegations. *Mullenix*, 577 U.S. at 12.

Alternatively, Terrell argues that Cannon's actions were so obviously unconstitutional, no precedent is required. The Supreme Court has denied qualified immunity without requiring precedent in some cases that concern obvious violations, albeit rarely. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (concluding that given "extreme circumstances" of the case, "no reasonable . . . officer could have concluded" that his actions were constitutionally permissible).

But the allegations that Terrell offers in support of her obviousness argument are not adequate to sustain it. She points first to her allegation that off-duty officers are "conceptually considered private actors operating private vehicles" because they are not monitored or required to report their activities to a dispatcher. "There [is] no set of circumstances," Terrell argues, "in which forcing a person against their will into a private actor's

5

private vehicle would be a reasonable means of conducting a Fourth Amendment seizure . . . ."

Terrell's claim that off-duty deputies should be treated the same as private citizens is, at bottom, a legal argument, not a factual claim. We cannot therefore accept it as true. *Twombly*, 550 U.S. at 555. Nor does she provide authority to support it as a legal argument. If anything, she establishes the opposite: that Hines and Cannon acted under color of law during the encounter because they were adorned with, and wielded, law enforcement authority. *See West v. Atkins*, 487 U.S. 42, 49 (1988). We cannot construe their actions as if they were private actors.

Terrell also points to her allegation that Cannon's "real motive may have been to allow sexual assault of Ms. Terrell by Deputy Hines." That *is* a factual claim, but a purely speculative one, and thus we lend it no credence. *See Twombly*, 550 U.S. at 555.

In sum, Terrell failed to show a clearly established violation of her rights. The district court correctly granted qualified immunity to Cannon.

### b. Supervisory liability

Next, Terrell seeks to hold Sheriff Gonzalez liable for Hines's actions as his supervisor. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citation omitted). Rather, to establish such liability, a plaintiff must show that: "(1) the [alleged supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Id.*

Terrell's allegations against Gonzalez are also sparse. She alleges, first, that Gonzalez was aware that Hines was arrested for sexually assaulting a child in 2018 and that Gonzalez "does not investigate and/or discipline officers alleged of crimes if they are no-billed[3] by a Grand Jury including sexual assault of a minor."

To allege deliberate indifference, Terrell's allegations must allow us to reasonably infer "a pattern of similar violations arising from [supervision] that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.* She alleges one related incident, not a pattern.

And while a single incident may give rise to an inference of deliberate indifference, that is only the case when "the highly predictable consequence of a failure to [supervise] would result in the specific injury suffered, and that the failure to [supervise] represented the moving force behind the constitutional violation." *Id.* at 295. To be "highly predictable," an outcome must be "*so* predictable that" the failure to supervise or discipline "amounted to *conscious disregard* for" the plaintiff's rights. *Connick v. Thompson*, 563 U.S. 51, 71 (2011) (emphasis in original). Terrell's acknowledgement that Hines was no-billed on the sexual assault charge—along with the conclusory nature of her allegations generally—makes it unreasonable to infer that her assault was a "highly predictable consequence" of Gonzalez's alleged failure to investigate Hines.

Terrell also alleges that Gonzalez customarily does not investigate, or discipline, deputies accused of violations if the complainant is charged with a crime. The allegation is puzzling given that Terrell does not allege that she

---

[3] A Texas arrestee is "no-billed" when the grand jury votes against the presentment of an indictment. Tex. Code Crim. Proc. Ann. Art. 20A.301. Terrell's allegation implies that Hines was no billed in this manner.

complained of Hines's conduct or that she was charged with a crime. In short, her allegation is too conclusory to sufficiently allege the requisite causal connection between Gonzalez's actions and Terrell's injury. *Guerra*, 82 F.4th at 285. Terrell's supervisory claims against Gonzalez fail.

### c. Municipal liability

Last, Terrell accuses Harris County of maintaining a policy of failure to adopt adequate training. To sustain a § 1983 claim against a municipality—a "*Monell* claim"[4]—a plaintiff must show that a policymaker can be charged with knowledge of a policy, custom, or practice that was the moving force in her injury. *Hutcheson*, 994 F.3d at 482. A custom or practice is a pattern "so persistent and widespread as to practically have the force of law." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick*, 563 U.S. at 61). The plaintiff cannot rely solely on the incident that resulted in her injury to demonstrate such a pattern. *Id.*

Terrell argues that her allegations that Hines and Cannon forced her into Hines's patrol vehicle and that Hines sexually assaulted her are sufficient to show a failure-to-train policy because they are outrageous. But a single incident simply cannot demonstrate a widespread pattern. *Id.*

Terrell also repeats her argument that Gonzalez's failure to investigate Hines for his earlier sexual assault arrest constituted deliberate indifference. That argument fails for the reasons stated above.

### IV. CONCLUSION

The district court did not err in concluding that Terrell's claim against Cannon is barred by qualified immunity. It also correctly dismissed Terrell's supervisory and municipal liability claims. Accordingly, we AFFIRM.

_____

[4] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).